(May 30, 1894.)

## IN RE COUNTIES ELMORE, LOGAN AND BINGHAM v. COUNTY OF ALTURAS.

[37 Pac. 349.]

DIVISION OF COUNTY—DUTY OF COMMISSIONERS—APPORTIONMENT OF DEBT.—When a county is divided by act of the legislature, and said act contains a provision that the boards of commissioners of the counties so created shall apportion a debt that may exist, to ascertain what portion each shall pay, *held*, that it is a perpetual continuing duty incumbent upon the commissioners then

Idaho Vol. 4—10

in office and their successors until it is performed, and that a right of action does not abate by reason of the persons holding the office of commissioners refusing or neglecting to perform such duty during their term.

Where Duty is of a Public Nature Law of Limitations Does not Apply.—Where the duty to be performed or the right to be enforced is of a strictly public nature, they are not subject to the law of limitations.

Same—Demand not Required.—Where a duty is of a strictly public character, by law required to be performed by a public officer, there is no one especially empowered to make the demand for its performance; therefore such demand is not necessary. The law itself is a continual demand, and neglect or performance is a continual refusal.

(Syllabus by the court.)

ORIGINAL proceeding in Supreme Court for writ of mandate. Writ granted.

Johnson & Johnson and Selden B. Kingsbury, for Petitioner.

Division of counties and apportionment of indebtedness is purely a legislative function. (*Laramie County v. Albany County,* 92 U. S. 306-315; *North Homestead v. Homestead,* 2 Wend. 134, 135; 1 Beach on Public Corporations, sec. 435; Dillon on Municipal Corporations, 4th ed., sec. 189; Cooley on Taxation, 2d ed., 239, 685; *Washington Co. v. Weld Co.,* 12 Colo. 152, 20 Pac. 273; Cooley's Constitutional Limitations, 6th ed., 229, 230; Cooley on Taxation, 2d ed., 45, 46; *Merriwether v. Garret,* 102 U. S. 472; Angell and Ames on Corporations, sec. 31; *Bourough of Dunmore's Appeal,* 52 Pa. St. 374; *Robertson v. Rockford,* 21 Ill. 451; 2 Kent's Commentaries, 13th ed., 306; *Memphis v. Memphis Water Co.,* 5 Heisk. 528; *Depere v. Town of Bellevue,* 31 Wis. 120, 125, 11 Am. Rep. 602; *Olney v. Harvey,* 50 Ill. 453, 99 Am. Dec. 530; *Daniel v. Memphis,* 11 Humph., 582; 10 Myer's Federal Decisions, secs. 2197, 2198, 2201; *Chandler v. Boston,* 112 Mass. 204.) There is no "impairment of the obligation of contracts" with the bondholders. They have nothing to do or say as to the methods prescribed or changed by the legislature, so long as payment is secured. (Patterson's Federal Restraints on State Action, sec. 61, p. 149; *Antoni v. Greenhow,* 107 U. S. 774, 2 Sup. Ct.

Rep. 91; *In re Jurisdiction of Justices of the Peace,* 9 Colo. 625, 21 Pac. 472; *Wade v. Richmond,* 18 Gratt (Va.) 583.) There is a vast difference between changing a contract and "impairing the obligation of a contract." (*Ogden v. Saunders,* 12 Wheat. 343; *Charles River Bridge v. Warren Bridge,* 11 Pet. 420, 539.) "A statute which contains a contract is not absolutely unchangeable, for it is a law as well as a contract." (*Thornton v. Hooper,* 14 Cal. 9.) "Laws passed in the exercise of the ordinary legislative power of a state are not contracts in the purview of the constitution, and laws which amend or repeal them do not fall beneath the constitutional inhibition." (*State v. Dew,* R. M. Charlt. 397; *Corning v. Green,* 23 Barb. 33; Patterson's Federal Restraints on State Action, 159; *Gilman v. Sheboygan,* 2 Black, 510; *Darthmouth College v. Woodward,* 4 Wheat. 629.) "Nor can a state legislature bind subsequent legislatures, as to the exercise of the powers of sovereignty, over the political subdivisions of the state." (Patterson's Federal Restraints on State Action, 179; Black's Constitutional Prohibitions, sec. 91, p. 111.) Where the duty is of public nature there need be no formal demand and refusal. "In such cases the law itself stands in lieu of demand, and the omission to perform the required duty in place of a refusal." (High on Extraordinary Remedies, secs. 13, 41;2 Spelling's Extraordinary Relief, sec. 1381.) *Mandamus* will lie upon petition of one county to compel the board of supervisors of another county to levy a tax that will go in to the treasury of the petitioning county in payment of a claim growing out of the division of counties. (*Contra Costa County v. Alameda County,* 26 Cal. 641; *Quincy v. Jackson,* 113 U. S. 332, 5 Sup. Ct. Rep. 332; *County Court of Ralls County v. United States,* 105 U. S. 733; *United States v. City of New Orleans,* 98 U. S. 381-398; Rev. Stats., sec. 4977; High on Extraordinary Remedies, sec. 31, 323.) "*Mandamus* will issue to compel county officials to adjust the proportion of the debt of the county, where it has been set off from another county." (2 Spelling's Extraordinary Relief, sec. 1514; *Homestead Co. v. Graves,* 44 Ark. 317; *School Dist. No. 2 v. School Dist. No. 1,* 3 Wis. 333.) "When statutes require a municipal officer to certify the amount due by the municipality to another municipality, *mandamus* will issue to com-

pel the performance of the duty." (2 Spelling's Extraordinary Relief, sec. 1514; *Loan Assn. v. Topeka,* 20 Wall. 655; Cooley on Taxation, 2d ed., 101, note 685.)

R. F. Buller and F. E. Ensign, for Respondent.

*Mandamus* is a prerogative writ issued to prevent a failure of justice where there is no other adequate legal remedy to enforce the performance of a duty, in which the complaining party is interested. (Wait's Actions and Defenses, 357, and cases cited.) The writ is not granted as a matter of course, but it rests, to some extent, in the discretion of the court, to be exercised upon equitable principle. (*Waldon v. Lee,* 5 Pick. 333; *Turner v. Potts,* 3 Mont. 364; *People v. Supervisors,* 15 Barb. 607-617.) Will not issue where the defendant has no power to perform the act required (*People v. Supervisors,* 15 Barb. 607; *People v. Hoyt,* 66 N. Y. 606; *People v. Supervisors of Greene,* 12 Barb. 217), or where it would be fruitless. (*Commonwealth v. Supervisors,* 29 Pa. St. 121.) Where the resource for the payment of the bonds of a municipal corporation is the power of taxation *existing when the bonds were issued,* any law which withdraws or limits the taxing power and leaves no adequate means for the payment of the bonds is forbidden by the constitution of the United States and is null and void. (*Wolff v. New Orleans,* 103 U. S. 358. See, also, *Ralls Co. Ct. v. United States,* 105 U. S. 733; *Van Hoffman v. Quincy,* 4 Wall. 535; *Girard v. Philadelphia,* 7 Wall. 1; *Brighton v. Pensacola,* 93 U. S. 266; *O'Connor v. Memphis,* 6 Lea, 730; *Amy v. Selma,* 77 Ala. 103; Cooley's Constitutional Limitations, 5th ed., 356.) Nothing is more material to the obligation of a contract than the means of its enforcement. The ideas of validity and remedy are inseparable and both are parts of the obligation which is guaranteed by the constitution against impairment. Any impairment is prohibited. The degree is immaterial. (*Walker v. Whitehead,* 16 Wall. 314; *Poindexter v. Greenhow,* 114 U. S. 270, 5 Sup. Ct. Rep. 903, 962; *Louisiana v. St. Martin's Parish,* 111 U. S. 716, 4 Sup. Ct. Rep. 648.) The act of division, section 7, before referred to, required the boards to appoint the accountants at their regular meeting in April, 1889, and made no provision for the appointment at any other time,

and hence there was no power given to that nor any other board
to appoint at any other time.   The general rule is, that power
given by a statute to a public corporation to do an act within
a certain time must be exercised within that time or it will be
lost.   (*Town of Williamsport v. Kent,* 14 Ind. 306; *Marsh v.
Chestnut,* 14 Ill. 223; *Sanderson v. Lasalle,* 57 Ill. 441.)   Civil
actions can only be commenced within the periods prescribed
in this title after the cause of action has accrued, except when
in special cases a different limitation is prescribed by statute.
The word "action" as used in this title is to be construed when-
ever necessary so to do as including a special proceeding of a civil
nature.   (Rev. Stats., sec. 4080.)   Where a power is given
by statute and a specific remedy provided, or a new power and
the means of executing it, the power can be executed and the
right vindicated in no other way than that prescribed by the act.
(Sutherland on Statutory Construction, sec. 399, and cases cited.)
The statute of limitations applies to counties in Idaho.   (Wood
on Limitation of Actions, sec. 58, and cases cited; 2 Dillon on
Municipal Corporations, 4th ed., secs. 668-674.)

Complainants file petition for writ of mandate against the
commissioners of Alturas county et al., and state: That on the
seventh day of February, 1889, the county of Alturas, then of
the territory of Idaho, was divided by act of the legislature.
There were erected therefrom the counties of Elmore and Logan,
and part of said original county was attached to Bingham
county, and part thereof was still to be and remain the county
of Alturas.   That at the time of and prior to the time of said
division the said county of Alturas was indebted to various
parties in the sum of more than $250,000, in interest bearing
bonds and county warrants.   By the provisions of section 7 of
said division act, it was provided that the debt of Alturas county,
as it then existed, "shall be apportioned between the counties of
Alturas, Elmore, Logan and Bingham counties in the same pro-
portion that the taxable property of the three counties have ac-
quired from Alturas county," and that the four counties bear
to each other, as shown by the assessment-roll of the year 1888
in Alturas county; and at their meeting in April, 1889, the
boards of commissioners of the four counties mentioned shall,
respectively, appoint each a competent accountant, who shall

meet at the town of Hailey, and proceed to audit and ascertain the amount of indebtedness to be paid by each of the aforesaid counties to Alturas county, etc. That in accordance with said section 7 the boards of commissioners of the counties of Elmore, Logan, and Bingham did each, respectively, appoint a competent accountant to audit said indebtedness, and to perform all other duties required of them. That Alturas county refused and neglected to appoint such accountant at that time, and ever since has refused and neglected so to do, or to do any act toward the same, or to allow or permit the apportionment of said indebtedness, and, as an excuse therefor, claims that the apportionment so directed and required by the statute would be unjust to the county of Alturas. That no part of said indebtedness, principal or interest, has been paid. That much of it is past due. The answer of Alturas county admits the material allegations of the complaint, and pleads—1. The statute of limitations; 2. That there has been no demand made upon the commissioners of Alturas county for such appointment, nor any refusal to appoint such accountant; and 3. Claims that an apportionment of the said indebtedness as required by said section 7 of the act dividing Alturas county would result in great injustice to Alturas county; that the method pointed out by said statute would be unconstitutional, as in violation of a contract.

MORGAN, J. (After Stating the Facts.)   We will first examine the claim that the action is barred by the statute of limitations. We are referred to Wood on Limitations, section 53, wherein he states that the maxim, "*Nullum tempus occurrit regi*," only applies in favor of the sovereign power, and has no application to municipal corporations deriving their powers from the sovereign, although their powers, in a limited sense, are governmental, and refers in support thereof to *County of St. Charles v. Powell,* 22 Mo. 525, 66 Am. Dec. 637. This was a case where a county attempted to recover from an individual money due the county on bond for money loaned, and it was held that limitation had run against the county. In *Baker v. Johnson Co.,* 33 Iowa, 151 (also referred to), the case was on claim of a private individual against the county for money, and it was held that the statute run in favor of the county. In *Evans v. Erie, Co.,* 66 Pa. St. 22, the county sought to recover possession

of a tract of land which had been in possession of a private individual for thirty-three years, and it was held that the statute run against the county. Of the same character are the other cases referred to by counsel for respondent. They are cases where it was sought by a county to recover a private right from an individual, or (*vice versa*) an individual sought to recover a private right from a municipality, and are not similar to the case at bar.

The following causes and principles show distinctions that must be drawn: It is a principle of the common law that the government—and therefore, by parity of reasoning, a county—cannot be guilty of laches. It is also well settled that a state is not barred by a statute of limitations, unless expressly named. (*Madison Co. v. Bartlett,* 1 Scam. 70; *Bank v. Brown,* 1 Scam. 107.) Agents of the county are not acting for themselves, but for the county, and therefore the county is not barred by their neglect. (*Bank v. Brown, supra.*) As respects public rights or property held for public use upon trusts, municipal corporations are not within the operation of the statute of limitations; but with regard to mere private rights or contracts the rule is different, and such corporations may plead, and have pleaded against them, the statutes of limitations. (*Logan Co. v. City of Lincoln,* 81 Ill. 156-159; *County of Piatt v. Goodell,* 97 Ill. 90, et seq.) In the latter case, quoting from Dillon: "Municipal corporations as we have seen, have a double character—the one public, the other private. As respects property not held for public use, as streets, commons, etc., and as respects contracts and rights of a private nature, there is no reason why such corporations should not fall within the limitation statutes, and be affected by them. It will perhaps be found that cases will arise of such a character that justice requires that an equitable estoppel shall be asserted as against the public; but, if so, such cases will form a law unto themselves, and do not fall within the legal operation of limitation enactments. The author cannot assent to the doctrine that, as respects public rights, municipal corporations are within ordinary limitation statutes." In Wait's Actions and Defenses, volume 7, page 234, the author says: "The privilege of the maxim '*Nullum tempus occurrit regi,*' does not apply to any of the subdivisions of a state, such as counties, cities, or other municipal corporations." "This

statement, in its application to municipal corporations, must, we think, be confined to cases involving mere private rights, and it should be accepted with this limitation," says Mr. Justice Mulkey in above case of *County of Piatt v. Goodell, supra,* The court states the general doctrine and the better opinion "to be that municipal corporations, in all matters involving mere private rights, as contradistinguished. from 'public rights,' strictly so called, are subject to limitation laws to the same extent as private individuals. On the other hand, in all matters involving strictly public rights, they are not subject to the limitation laws, as such." But in the latter class of cases the courts occasionally, under special circumstances which would make it highly inequitable or oppressive to enforce such public rights, interpose by holding the municipality estopped from doing so.

In the case at bar the legislature (15th Sess. Laws, sec. 7, p. 35) commands the county commissioners of each of the four counties of Alturas, Elmore, Logan, and Bingham, at their regular meeting in April, 1889, respectively, to appoint such a competent accountant, who shall meet at the town of Hailey, and proceed to audit and ascertain the amount of indebtedness to be paid by each of the aforesaid counties to Alturas county, etc., specifying particularly the duties of these auditors, when so appointed. The appointment of these accountants is a public duty to be performed by the commissioners of each of these counties. It is due to the people of these counties that this appointment should be made. There is a large indebtedness, estimated variously at $290,000 to $325,000, which was due from Alturas county to various parties at the time of the division of the county, February 7, 1889. This large amount is drawing interest. This interest is accumulating, and is much of it past due. The counties are each required to levy a tax each year for the payment of this interest. They cannot do this without knowing the proportion of indebtedness each is to pay. This they cannot know without an apportionment. Each county is interested in knowing its share at the earliest practicable date. In this proceeding we have nothing to do with the basis of this apportionment. It is the clear duty of this court to put in motion the machinery necessary to bring about an apportionment of the debt. The question as to the correctness of the apportionment, or of the legality of the proceedings in mak-

ing it, is not before the court; and it is apparent that the court has no facts before it now upon which to act, further than to require an apportionment. It is apparent, also, from an inspection of the sections of the law involved in this division of the indebtedness, to wit, section 3605 of the Revised Statutes and section 7 of the division act (15 Sess. Laws, p. 35), that the legislature intended that each of the counties should bear a portion of the indebtedness in proportion to the amount of taxable property each received from Alturas county as it existed in the year 1888, except as to bonds issued for the erection of court-houses and other public buildings, concerning which a different. provision is made; and necessarily some testimony must be taken, in order to ascertain what amount of taxable property went to each. No evidence is before this court in this regard, and therefore no intimation is given or intended, in this opinion, as to the burden each county should take. The appointment of these accountants is a public duty devolving upon the several counties, as pointed out in the law, and a public duty in the performance of which all the people are vitally interested; and it is a public duty and a public right, in the sense spoken of by the court in the cases of *Logan County v. City of Lincoln,* and *County of Piatt v. Goodell, supra;* and such matters, involving strictly public rights, as distinguished from private rights and duties, are not subject to the limitation laws, as such.

It is contended that sections 4060 and 4061 of the Revised Statutes of Idaho, make the statute of limitations applicable to the state and to the counties thereof, and to actions of the character of the one at bar. Section 4060 states: "An action for relief not hereinbefore provided for must be commenced," etc. It will be noticed that all the sections preceding section 4060 apply to actions by or against private individuals for the enforcement of a private right or correction of a private wrong, and therefore we must conclude that section 4060 refers to actions of the same character which have not been specially enumerated in the other sections. It would seem to be clear that, if actions of a public nature to enforce the performance of a public duty or obligation were intended to be included in this section, the legislature would have said so, as this would include actions of an entirely different nature from those specified in the other sections of the chapter, and, if so construed,

would include a large class of cases of which nothing is said in the limitation statutes, and which are clearly not barred by lapse of time. We cannot thus undertake to extend the statute, by construction, beyond what the legislature seem to us evidently to have intended. The same is true with reference to section 4061. The state, in the enforcement of a right against private individuals, would not ordinarily be barred, and not at all unless specially named; and therefore section 4061 says (as amended): "The limitations prescribed in this title apply to actions brought in the name of the state, or for the benefit of the state." This section is specifically restricted to the limitations "prescribed in this title"; that is, to actions of a private nature, and against private individuals. To hold that it applied to actions such as the one at bar would seem to be extending the limitation beyond either the words or meaning of the statute, and therefore beyond the intention of the legislature. If the court did this in this case, where a public duty is involved and required, why may the court not be called upon to extend the statute to other duties and rights of a public nature, which are not included, and not intended to be included, in the statute of limitations? (*People v. Melone*, 73 Cal. 574, 15 Pac. 294.) It is true, in certain cases, courts have held and do hold that the limitation laws take effect, when called upon after long lapse of time, when the enforcement of the duty or right, on account of changed conditions, would work great injustice; but in the case at bar great injustice must result from longer postponement of the duty enjoined by the statute, as interest is accumulating which must eventually be paid by the counties liable therefor. Under the said seventh section of the law dividing Alturas county, the appointment of these accountants by the commissioners of the respective counties, and the making of this apportionment, is a continuing duty and obligation until it is performed.

As to demand and refusal, there is the same distinction between public and private rights and duties. In the latter case, demand on the part of the party entitled to have the duty performed, and a refusal or neglect on the part of the party who is under obligation to perform the duty must be made; but when the duty to be performed is strictly of a public nature, as when it is done by a public officer or officers, there is no one specially

empowered to make the demand for its performance, and there is no necessity for demand and refusal. (*State v. County Judge,* 7 Iowa, 186; Short's Information, sec. 249.) In such case the law imposing the duty is a continual demand, and neglect of performance a continual refusal. (Short's Information, sec. 249; Beach on Public Corporations, 1599, note; 2 Spelling's Extraordinary Relief, sec. 1381.)

We have been referred to *United States v. Boutwell,* 17 Wall. 604, as a case sustaining the contention of the respondents that the cause of action was and could be against the county commissioners of Alturas county in office in 1889 only, and that right of action abated with the expiration of their then present term of office. This case is explained in *Commissioners v. Sellew,* 99 U. S. 626; also, in *Thompson v. United States,* 103 U. S. 483, 484. This action is not in any sense a personal action. It is an action against the county and the commissioners of a county, as officers and not as persons; and the cause of action does not abate by any set of officers going out of office, as it is a continuing duty, devolving upon the commissioners as such. So the right of action continues until the duty is performed. It is a perpetual duty, devolving upon the commissioners of 1889, and their successors, until it is performed.

It is our opinion that the said commissioners should, without unnecessary delay, proceed to appoint accountants, as directed by section 7, whose duty it will be to meet with other accountants of the counties named, and apportion the indebtedness of Alturas county as it existed at the time of the division of the county. A peremptory writ is ordered to issue, commanding and requiring the boards of county commissioners of Alturas, Elmore, Logan, and Bingham counties, respectively, to appoint accountants in accordance with section 7 of an act entitled "An act creating the counties of Elmore and Logan" (15th Sess. Laws, p. 35), without delay, whose duties shall be to apportion the said indebtedness of Alturas county, as it existed at the time of said division, to wit, February 7, 1889, between the said above-named counties.

Huston, C. J., and Sullivan, J., concur.