(July 15, 1912.)

## OTTO G. REINHART et al., Respondents, v. CANYON COUNTY et al., Appellants.

[125 Pac. 791.]

HIGHWAYS—BRIDGE BONDS—TAX LEVY—HIGHWAY DISTRICT LAW—
CONSTRUCTION OF BRIDGES—HIGHWAY DISTRICT COMMISSIONERS—
COUNTY COMMISSIONERS—POWERS OF.

(Syllabus by the court.)

1. Sec. 15 of the highway district law (Sess. Laws 1911, p. 121) provides that the highway commissioners in a highway district shall constitute the highway board and shall have, except as provided in sec. 54 of said act, exclusive general supervision and jurisdiction over all highways within the district.

2. Sec. 17 of said act provides that in respect to all highways included within such district, the power and jurisdiction of the highway board shall have exclusive jurisdiction except as provided in sec. 64 of said act.

3. Sec. 64 has reference to the powers of municipal corporations included within the boundaries of a highway district.

4. Sec. 16 of said act is identical with sec. 887a of chap. 60 of the Laws of 1911 (Sess. Laws, p. 168), and said chapter amends the general road and bridge laws under which the county commissioners operated.

5. Sec. 1962 provides, among other things, that when the interests of the county require it, and the board of county commissioners deem it for the public good to bond the county for the construction or repair of roads or bridges and the indebtedness or liability of the county that may be created for the construction or repair of such roads or bridges exceeds the income or revenue of the county for that year, the board of county commissioners may issue bonds of the county as provided in sec. 1960, provided the issuance of such bonds is authorized by a vote of two-thirds of the qualified electors of the county.

6. Sec. 1963 provides, among other things, that the board must cause to be levied annually upon all of the taxable property of the county, in addition to other authorized taxes, a sufficient sum to pay the interest on all such bonds. *Held,* that the provisions of said sections construed together show that the legislature intended such

bonds should be binding obligations upon all of the property in the county.

7.   Sec. 37 of the highway district act provides that the county may levy a road tax for general road purposes on all the property within the county including the highway district therein, and said tax is apportioned by the provisions of said section.

8.   Under sec. 42 of said highway district act, the provisions of secs. 37, 38, 40 and 41 of said act, except the first sentence of sec. 37, do not apply to any taxes levied, assessed or collected within any highway district to meet the payment of the bonds issued by the county or other political corporation within said county.

9.   Sec. 65 of said highway district act, when construed by itself, has two purposes: First, to place in the highway district board the exclusive power to levy and apply the road, bridge and highway taxes within the district except in respect to general county taxes, the distribution of which taxes is provided for by sec. 37 of said act; and, second, to protect without change the method of levying taxes to pay bonds issued prior to the organization of the highway district, and from the language used in said sec. 65, considered in connection with sec. 37, the right of highway districts to levy and apply taxes within the district relates to general levies for road purposes and not to special levies made to meet the payment of bonds for the construction of bridges, issued by the county.

10.   The board of county commissioners has the power to issue county bonds for bridges built in the county outside of a highway district and to levy taxes on the entire county for the payment of such bonds, provided it is determined that that portion of the county included in a highway district is benefited by the building of such bridges.

11.   Sec. 16 of said highway district act, and sec. 887a, Rev. Codes, as amended by Sess. Laws 1911, p. 168, provide that in case the construction, maintenance, repair or improvement of any highway or portion thereof within a county and not included within a highway district would also be a benefit to such district, the highway board of the district and the board of county commissioners have power to contract each with the other for a division and apportionment of the cost of such construction, etc., and in case they fail to agree the proper action may be brought therefor in the district court.

12.   In such a case the board of county commissioners has the power and authority to levy the tax upon all of the property within the county for the payment of such bonds and the interest thereon.

13.   The failure of said boards to adjust said indebtedness would in no manner invalidate the bond issue, as the validity of the bonds does not depend upon such an adjustment.

14.  The political subdivision of the state recognized by our constitution as a county is none the less a county because of the organization of a highway district therein.

15.  Under the provisions of said highway district act the district may issue highway district bonds for certain highway purposes within such district, and the county may issue its bonds for bridge or other highway purposes where such improvement is a benefit to all parts of the county.

APPEAL from the District Court of the Seventh Judicial District for Canyon County. Hon. Carl A. Davis, Judge.

Action to restrain the county commissioners of Canyon county from issuing and negotiating certain bridge bonds in Canyon county. Judgment for plaintiffs. Judgment *modified*.

J. A. Elston, R. B. Scatterday, and Richards & Haga, for Appellants.

A highway district is a public corporation, and municipal agency within the county, and has only such powers as are conferred upon it by law. (*State ex rel. Bulkley v. Williams*, 68 Conn. 131, 35 Atl. 24, 421, 48 L. R. A. 465; *Hettinger v. Good Road District No. 1*, 19 Ida. 313, 113 Pac. 721.)

Under the provisions of sec. 13 of the act a highway district is a "body politic and corporate," and is merely a municipal organization or agency within the county, and exists only for the more convenient administration of the local government of the people. (*In re Madera Irr. Dist.*, 92 Cal. 296, 27 Am. St. 106, 28 Pac. 272, 675, 14 L. R. A. 755.)

So far as the provisions of chap. 55 are necessarily inconsistent with secs. 1962 and 1963, the provisions of the former are paramount and must prevail. (*Matter of Murray Hill Bank*, 153 N. Y. 211, 47 N. E. 298.)

A repeal by implication because of inconsistency or repugnancy would never be declared where a reasonable construction will harmonize the statutes alleged to be conflicting. (*People ex rel. Woods v. Crissey*, 91 N. Y. 616; *Mark v. State*, 97 N. Y. 572; *Armbruster v. Wilson*, 43 Hun, 261.)

Rice, Thompson & Buckner, and F. A. Hagelin, for Respondents.

Respondent contends that sections 1962 and 1963 have not been repealed, but still stand as a part of the statutes, and are applicable to those counties and portions of a county in which the governmental functions relating to highways have not been by law taken from the county and by operation of law vested in some other public corporation. (*Heinssen v. State,* 14 Colo. 228, 23 Pac. 995; *Mernaugh v. City of Orlando,* 41 Fla. 433, 27 So. 34.)

SULLIVAN, J.—This action was brought by the respondent, who is a qualified elector and taxpayer of Canyon county and a resident of the Nampa Highway District, to enjoin Canyon county and the board of county commissioners thereof from issuing and negotiating certain bridge bonds of said county, and enjoining the defendants from entering into a contract for the sale of such bonds for the construction of bridges across the Payette river in Canyon county.

The case was tried by the court upon substantially the following evidence or facts: On February 8, 1911, a petition was presented to the board of county commissioners of said county, signed by the required number of taxpayers of the road district in which such proposed bridges were to be constructed, petitioning for the construction of bridges across Payette river in said county at Fruitland, New Plymouth and Letha. Due and legal notice of the hearing of said petitions was given, and on March 14, 1911, the board met in regular session, and after hearing testimony as to the necessity therefor, found the construction of such bridges necessary. The county surveyor was directed to prepare proper plans and specifications for such bridges. Thereafter upon proper notice the board received bids for the construction of such bridges, and on June 20, 1911, accepted the bids of Forbes & Co. for the erection of such bridges, for the sums of $15,795, $15,875 and $15,960, respectively, subject to a bond election. On August 5, 1911, the issuing of such bonds was submitted to

the voters of the entire county. After canvassing the votes on August 9, 1911, the board found that the question of bonding the county had carried and that the board was authorized to issue and sell bonds of the county for the purpose of constructing said bridges, and caused notice to be published for the sale of said bonds. On the 7th of April, 1911, a petition was filed with the clerk of the board of county commissioners praying for the organization of the Nampa Highway District in accordance with chap. 55, Sess. Laws of 1911, p. 121. An election was held on April 29, 1911, pursuant to notice given, which resulted in favor of the organization of such highway district, and on May 8, 1911, the Nampa Highway District was declared duly organized and is now a legally organized and existing highway district. The evidence shows that said bridges, when constructed, will be situated entirely without the boundaries of said highway district but within the boundaries of Canyon county. It is alleged in the complaint that the board of county commissioners will sell and negotiate, and are about to sell and negotiate, such bonds, and that no proceedings have been had between the highway board of said district and the county commissioners for a division and apportionment of the cost of construction of such bridges, and that the issuance and sale of said bonds will subject the property of the respondent and others similarly situated to the burden of increased taxation. The evidence shows, and the court found, that the income or revenue of said county was insufficient to pay the current expenses of the county for the year 1911, and that at the time the petitions for said three bridges were presented and during that entire year the county was indebted over $30,000 in outstanding warrants on account of the road and bridge fund, and that the indebtedness proposed to be incurred by these bonds exceeded the income or revenue of the county available for road and bridge purposes for the year 1911. The evidence also shows that the county commissioners intended to levy the same rate of taxation upon the property of the highway district as upon the remainder of the county outside of the district in making the levies and assessments for the payment of said bonds.

Upon the evidence thus introduced, the trial court entered judgment to the effect that the said bridge bonds were legally issued and denying plaintiff's prayer for an injunction restraining the commissioners from selling, issuing and negotiating said bonds. But said judgment restrained the county commissioners from applying to the payment of said bonds any of the taxes assessed and collected within the Nampa Highway District in an amount exceeding five per cent of the amount of taxes so collected in said district, and from levying or collecting taxes within the district for the payment of said bonds except the said five per cent. From said judgment this appeal is taken.

Several errors are assigned but the main question presented for determination is: Has the board of county commissioners the power to bind the property and levy taxes against the property within a legally organized highway district for the payment of bonds issued by the county after the organization of such highway district, the proceeds to be used in the construction of a bridge within the county but without the boundaries of such highway district.

It is conceded by respective counsel that a county is a public corporation and a legal subdivision of the state, and that a highway district is a public corporation within the county and that highways consist of roads and bridges.

We will first consider the power and authority given to highway districts under the Session Laws of 1911, found at page 121. That act provides for the formation of such districts and provides that such public corporation may exercise the public functions of a county that had theretofore been exercised by the board of county commissioners, viz., the laying out, abandoning and constructing of highways, and that when a highway district has been organized the highway board of such district takes over all the powers of said board of county commissioners in so far as they relate to highways within the territory composing the highway district. In other words, the highway board is substituted for and takes the place of the board of county commissioners with reference to

highways within the territory embraced in the district, and
it would appear that the power of the board of county com-
missioners ceases so far as such district highways are con-
cerned. Sec. 15 of said highway act (Sess. Laws 1911, p. 127)
provides that the highway commissioners in a highway dis-
trict shall constitute the highway board and shall have, ex-
cept as provided in sec. 64 of said act, exclusive, general super-
vision and jurisdiction over all highways within their district.
Sec. 17 of said act provides as follows: "In respect to all high-
ways included within such district, the power and jurisdiction
of the highway board shall be exclusive, except as provided in
section sixty-four of this act." Sec. 64 has reference to the
powers of a municipal corporation included within the bound-
aries of a highway district.

Sec. 16 of said highway district act is identical with sec.
887a of chap. 60 of the Laws of 1911 (Sess. Laws, p. 168).
Said chapter amends the general road and bridge law under
which the county commissioners operated. Under the provi-
sions of secs. 1962 and 1963, Rev. Codes, the board of county
commissioners is given certain power in regard to bonding the
county for the construction or repair of roads or bridges.
Sec. 1962 provides, among other things, "When the interests
of the county require it and the board of commissioners
of the county deem it for the public good to bond the county
. . . . for the construction or repair of roads or bridges . . . .
and the indebtedness or liability of the county that may be
created by the bonding, funding or refunding aforesaid,
. . . . for the construction or repair of roads or bridges
. . . . exceeds the income or revenue of the county for that
year, the board of commissioners may issue bonds of the
county as provided in sec. 1960 . . . . ," provided the issu-
ance of such bonds is authorized by a vote of two-thirds of the
qualified electors of the county.

Sec. 1963 provides that "The board must cause to be levied
annually, upon all the taxable property of the county, in addi-
tion to other authorized taxes, a sufficient sum to pay the in-
terest on all bonds disposed of. . . . . Should the tax for the
payment of interest on any bonds issued under the provisions

of this article at any time not be levied or collected in time to meet such payment, the interest must be paid out of any moneys in the county general, or current expense, fund, . . . . '' Those provisions construed together show that the legislature intended that such bonds should be binding obligations upon the whole county unless such intention is shown to have been modified by the said highway district act of 1911. Sec. 37 of said highway district act provides that the county may levy a road tax for general road purposes on all the property in the county including the highway district therein, which tax is apportioned by the provisions of said section.

Sec. 42 of said highway road district act provides as follows: "The provisions of secs. 37, 38, 40 and 41 hereof, except the first sentence of sec. 37, shall not apply to any taxes levied, assessed or collected within any highway district to meet the requirements of any bonds issued by the county or by any city, town, village, highway district or other body politic or subdivision." It appears from that provision, by implication at least, that the board of county commissioners shall levy taxes throughout the entire county to meet the bond obligations of the county. It is provided that the provisions of secs. 37, 38, 40 and 41, except the first sentence of sec. 37, shall not apply to taxes levied for the payment of bonds. That clearly makes the first sentence of sec. 37 applicable to taxes levied "to meet the requirements of any bonds issued by the county," and the first sentence of said sec. 37 includes highway districts. The legislature intended the county commissioners to levy taxes for the bonds of the county on all property of the county including property within a highway district. Let us, then, consider sec. 37 in connection with sec. 65 of said highway act. Sec. 65, when considered by itself, refers especially to sec. 37 and seems to have two purposes: (1) To place in the highway board "the exclusive power to levy and apply the road, bridge and highway taxes within the district except in respect to general county taxes, as provided in said section 37 hereof"; and (2) to protect without change the method of levying taxes to pay bonds issued prior to the organization of a highway district. From the language used

in sec. 65, considered in connection with section 37, it seems clear that this right of a highway district to levy and apply taxes within the district relates to general levies for road purposes and not to special levies made to meet the payment of bonds for the construction of bridges issued by the county. We think this view is sustained when secs. 37 and 65 are construed together in connection with sec. 42 of said act. Sec. 42 provides that sec. 37, except the first sentence thereof, and secs. 38, 40 and 41 "shall not apply to any taxes levied . . . . within any highway district to meet the requirements of any bonds issued by the county. . . . . " This language shows that the first sentence of sec. 37 does not apply to any taxes levied within any highway district to meet the requirements of any bonds issued by the county. It is evident that the first sentence of sec. 37 does not apply to any taxes levied within any highway district to meet the payments on bonds issued by the county, as it provides, "taxation for road and bridge purposes by the board of county commissioners under general laws shall be uniform upon the same class of subjects within the limits of the territory of the county, including without change or discrimination all territory included within any highway district."

The legislature evidently intended by that provision that the levy provided for should be uniform on the same class of property in the county within and without a highway district situated in the county, and when this provision for such uniformity is made applicable by the language of sec. 42, to wit, "to any taxes levied within any highway district to meet the requirements of any bonds issued by the county," it is clear that it was the intent that the county should issue county bonds for bridges built in the county outside of the highway district and levy taxes on the entire county outside of the highway district and the portion of the county included within such highway district to meet the payments on bonds issued under the provisions of said secs. 1962 and 1963, Rev. Codes. Those sections have not been repealed by the highway district act and are still in force so far as the powers of the board of county commissioners are concerned.

By enacting sec. 16 of the highway district act (Laws 1911, p. 129) the legislature no doubt intended that where bridges and road improvements are made under the authority conferred upon the board of county commissioners in territory not included within a highway district, and it appears that such improvements are for the benefit of such highway district as well as the territory of the county not included within the highway district, and that the cost of construction, maintenance, repair or improvement, if borne wholly by the territory excluded from the highway district, would be an injustice or an unreasonable burden thereon, in said case the highway district and the board of county commissioners are given power to contract each with the other for a division and apportionment of the cost of such construction, maintenance, repair or improvement, and in case the boards cannot agree, then an action might be brought for the purpose of settling and adjusting such costs; and where such improvement is made by the highway district and benefit results to territory outside of such highway district and the burden is unreasonable to the district, then in such case the highway board and the commissioners may agree as to the portion or portions which shall be paid by the highway district and the portion outside of the highway district, and if an agreement cannot be reached, then the costs may be adjusted by an action. It was intended by the legislature that both the district and the portion outside of the district and within the county should proportionately bear the burden of improvements made within the respective territory consisting of a highway district and also in the county outside of the district, in proportion to the benefits where the burden would be unreasonable to the territory making the improvement.

In the case at bar the bonds in controversy were voted by the electors of the entire county, including both the territory within and without the highway district, and the payment of such bonds and the interest accruing thereon is to be raised by a fund arising from an assessment made by the board of county commissioners on all assessable property within the entire county included without and within the highway dis-

trict; and the question as to whether or not the county should reimburse the highway district because the construction of such bridges, for which the bonds were voted, was not a benefit to the highway district is to be determined as provided by sec. 16 above referred to. The particular manner of apportionment, or the basis of determining the benefits or burdens, as provided in sec. 16, is not involved in this action, except that such provisions do not affect the validity of the bonds involved. When a controversy arises under sec. 16 and the facts are found, either by agreement or suit, the court will be better able to construe said section.

We think it is clear under the provisions of said highway district act and the statute concerning the issuance of bonds for the construction of bridges, that in a case like the one at bar the board of county commissioners has the power and authority to levy the tax upon all of the property within the county for the payment of such bonds and the interest thereon.

While it is true an adjustment has not been made between said district and that portion of the county not included within the district, that would not invalidate the bond issue, as the validity of the bonds would not depend upon such adjustment. While said section provides for such adjustment, it does not specify the time when such adjustment must be made, but it clearly contemplates that the adjustment should be made at some proper time. Such adjustment or the time when it must be made certainly cannot affect the validity of the bonds. If either of said boards should refuse to act and perform the duties imposed on them by law, the statute provides a method by which they may be compelled to act, and in case they cannot agree upon a proper adjustment, then a proper action may be maintained in the district court. The refusal to act or the nonaction of either or both of said boards could not affect or impair the validity of the bonds.

It seems to us that to sustain the contention of respondents to the effect that Canyon county must issue bonds covering only that portion of the county situated outside of, and not included in, the highway district, and let the highway district provide for the payment of its proportionate part of the

bonds, would be to hold that such bonds would not be county obligations; that is, the bonds would not be an obligation of the whole county.   It certainly will not be contended that the political division recognized by our constitution and statute as a county is any less a county because of the organization of a highway district therein.   Under the provisions of the highway district act, the legislature intended that such a high-way district could issue bonds for certain highway purposes within such district, and that the county could issue its bonds for highway purposes in cases like that at bar where the improvement is without the district but within the county; that is, where the territory of the entire county is benefited by the improvement, and it is clear to us that the adjustment of the proportional part that each should pay would not in any manner affect or impair the validity of any bonds issued by the highway district for purposes of improvement within the district, or county bonds issued for improvements that benefit the entire county.

We therefore conclude that the judgment of the district court must be modified, wherein it was decreed that the defendants be restrained from applying to the payment of said bonds any of the taxes assessed and collected within the Nampa Highway District in any amount exceeding five per cent of the amount of taxes so collected in said district, and from levying or collecting taxes within the district for the payment of said bonds except said five per cent; and that judgment and decree be entered in accordance with the views expressed in this opinion.   Costs are awarded to appellants.

Stewart, C. J., and Ailshie, J., concur.