(July 27, 1918.)

EVAN EVANS et al., as State Board of Education and Board of Regents of the University of Idaho, Plaintiffs, v. CLARENCE VAN DEUSEN, Auditor, and JOHN W. EAGLESON, Treasurer, of the State of Idaho, Defendants.

[174 Pac. 122.]

MANDAMUS—EDUCATIONAL INSTITUTION FUNDS—APPROPRIATIONS.

1. Funds derived from the various land grants by the general government to the state of Idaho, made by the Idaho admission act, are trust funds, and are not, strictly speaking, subject to appropriation by the legislature. It requires legislative action, however, in order that the proceeds of such funds may become available for the purposes designated by the terms of the grant.

2. The perpetual appropriations of the proceeds of the University fund, Agricultural College fund, Scientific School fund, Normal School fund, Idaho Industrial Reform School fund, now known as the Idaho Industrial Training School fund, and the Academy of Idaho fund, now known as the Idaho Technical Institute fund, found in Sess. Laws of 1905, 1907 and 1911, are still effective, such perpetual appropriations not having been amended or repealed by the appropriation act of 1917 providing for the support of such institutions.

3. Sess. Laws 1917, chap. 70, does not authorize the transfer of any of the funds properly belonging to the institutions above named to any other funds in the state treasury.

4. Writ of mandate will not issue to compel an officer to perform his duties generally. It must be directed to a specific act or actions.

[As to the duties the performance of which may be compelled by *mandamus*, see note in 125 **Am. St.** 495.]

Original application for writ of mandate. *Denied.*

J. R. Smead, for Plaintiffs.

Idaho Admission Bill, sec. 5, provides that all grants of land contained in sec. 11 "shall be held, appropriated and disbursed exclusively as herein mentioned, in such a manner as the legislature of the state may provide." (*Roach v. Gooding*, 11 Ida. 244, 253, 81 Pac. 642.)

A later holding of the court seems to modify the last cited case, to the extent that sec. 5 is not held to apply to the grants of land discussed in this brief. (*Pike v. State Board,* 19 Ida. 268, Ann. Cas. 1912B, 1344, 113 Pac. 447.)

The acceptance of land grants subject to the conditions specified, make the state a trustee and the proceeds a trust fund. (*State v. McMillan,* 12 N. D. 280, 96 N. W. 310; *Roach v. Gooding, supra.*)

The legislature cannot appropriate the money in these special funds, using the word "appropriate" in its true legal sense. (*Ingram v. Colgan,* 106 Cal. 113, 46 Am. St. 221, 38 Pac. 315, 39 Pac. 437, 28 L. R. A. 187.)

T. A. Walters, Atty. Genl., A. C. Hindman, Assistant, B. W. Oppenheim, J. M. Parrish and J. M. Lampert, for Defendants.

The legal right of the plaintiff or relator to the performance of the particular act of which performance is sought to be compelled must be clear and complete. (26 Cyc. 151; *Burke v. Edgar,* 67 Cal. 182, 7 Pac. 488.)

The writ will be denied if the performance of the act sought to be enforced is not clearly imposed upon the officer as an official duty. (*Patty v. Colgan,* 97 Cal. 251, 31 Pac. 1133, 18 L. R. A. 744; *State v. Marron,* 18 N. M. 426, 137 Pac. 845, 50 L. R. A., N. S., 274.)

*Mandamus* is not an appropriate remedy to compel a general course of official conduct or a long series of continuous acts, as it is impossible for the court to oversee the performance of such duties. The proper function of a *mandamus* is to compel the doing of a specific thing, something which can be neither diminished nor subdivided. (19 Am. & Eng. Ency. of Law, 724.)

The income funds mentioned in the complaint can only be drawn out of state treasury, and applied to the use as provided for in land grants out of which they grew, upon authority of an appropriation made by the legislature. (*State v. Stover,* 47 Kan. 119, 27 Pac. 850, 852; *State v. Maynard,* 31 Wash. 132, 71 Pac. 775, 778; *Proll v. Dunn,*

30 Cal. 226, 22 Pac. 143; *State v. Hickman,* 9 Mont. 370, 23 Pac. 740, 8 L. R. A. 403; *State v. Burdick,* 4 Wyo. 272, 33 Pac. 125, 24 L. R. A. 266.)

The legislature has a right to amend a general blanket and perpetual bill such as the acts of 1905 appropriating these income moneys. (*Evans v. Huston,* 27 Ida. 559, 150 Pac. 14.)

RICE, J.—This is an original proceeding in this court.

By the Idaho admission act, Congress granted to the state 90,000 acres of land as an endowment for an agricultural college or colleges, in accordance with the terms of the act of July 2, 1862, (12 Stats. at L. 503); seventy-two sections of land in accordance with the act of February 18, 1881, (21 Stats. at L. 326), and 50,000 acres in addition thereto as an endowment for a state university; 100,000 acres as an endowment for a scientific school; 100,000 acres as an endowment for the state normal schools; also 150,000 acres for other state, charitable, educational, penal and reformatory institutions.

Art. 9, sec. 8, of the constitution contains the following provision: "The legislature shall, at the earliest practicable period, provide by law that the general grants of land made by Congress to the state shall be judiciously located and carefully preserved and held in trust, subject to disposal at public auction for the use and benefit of the respective objects for which said grants of land were made . . . . . " ·

In 1905 the legislature, by a series of acts, created and established a university fund, agricultural college fund, scientific school fund, normal school fund, Idaho Industrial Reform School fund, now known as the Idaho Industrial Training School fund, and the Academy of Idaho fund, now known as the Idaho Technical Institute fund. Each of the two last-mentioned funds were to receive a specified portion of the proceeds from the 150,000 acre grant for state charitable, educational, penal and reformatory institutions.

Each of these various acts creating the funds, with the exception of the scientific school fund and the agricultural

college fund, contained a provision to the effect that per-
petually from and after the first day of January, 1907, all
moneys which might accrue to the several funds should be
appropriated and set apart for the support and maintenance
of the respective institutions named in the acts, and should
be made available for such purpose immediately upon being
credited to the various funds. In 1907 a similar perpetual
appropriation was made with reference to the moneys which
would thereafter accrue to the scientific school fund. In
1911 the legislature again established the agricultural college
fund, and made similar perpetual appropriation of the
moneys which would thereafter accrue for the support and
maintenance of the said college. These various acts creating
the several funds mentioned, and providing for the perpetual
appropriation of the moneys which should accrue thereto,
have never been repealed.

With reference to the deaf and blind school, it does not
appear that any fund has been created for this institution.
In 1905 an appropriation was made from the state charitable
institutions fund for the education of the deaf and blind
in the state for the years 1905 and 1906, but no further ap-
propriation appears to have been made from that fund.
It would seem, therefore, that the appropriation in the 1917
laws contains the entire appropriation for that institution
for this biennium.

Sess. Laws 1917, chap. 70, contain the appropriation for
these institutions for the period commencing on the first
Monday of January, 1917, and ending on the first Monday
in January, 1919. This act contains the following provisos:

"Provided, however, that when any moneys or funds, not
appropriated herein and which are properly available for
the expenses of the current biennium are or have been re-
ceived subsequent to February 1, 1917, except federal funds,
which shall be computed as of January 1, 1917, by the state
treasurer, by the treasurer of any institution or institutions
herein named or by any agent or employee thereof from en-
dowment or other sources of income for the support and
maintenance of any work or operation carried on under the

authority, control and direction of the state board of education and board of regents of the University of Idaho or any institutions, departments, officers or employees of said board, funds in an amount or amounts equal to the money or moneys so received shall be withdrawn by the state treasurer from the funds herein appropriated for the board or institution receiving such funds and placed in the general fund of the state, and the appropriation or appropriations herein made for such board or institution shall be decreased automatically by such amount or amounts equal to such money or moneys so received by such board or institution:

"Provided, further, that all funds received by and for the use of the board or any institution named herein, except federal aid received from the government of the United States which, under the law granting said aid, must be retained by the institution receiving the same, shall be turned into the state treasury monthly by such board or institution, and if said funds so reported and turned into the state treasury properly belong to the board or institution reporting the same, the state treasurer shall place such funds to the credit of said board or institution: . . . .

"All sums hereinafter appropriated shall be paid out by the state treasurer upon warrants drawn by the state auditor against the general fund of the state only. The amounts herein specified constitute the whole amounts appropriated by the legislature of the state of Idaho for the purposes specified, and no greater sum or sums shall be expended for the said purposes in any manner which will create a further claim against the state of Idaho."

It appears that the defendants have maintained the several funds above referred to and in the first instance have placed therein the moneys properly applicable thereto. It further appears that all claims against the various institutions named above, during this biennium, have been allowed and paid by warrants drawn on the general fund.

The auditor gives the following explanation of his method of handling claims against these various institutions: "Out of the general fund of the state there is set aside on the

books of the state auditor the total amount of the appro-
priation made in said act for each institution.  This then
constitutes a distinct and separate appropriated fund out of
which expenditures by the various institutions are paid by
warrants after the allowance of the claims therefor.  Each
warrant drawn shows specially the appropriation against
which it is drawn and the nature of the expense. . . . .
While warrants so drawn appear in the first instance against
that part of the appropriation derived from the general fund,
the account is properly chargeable against the combined ap-
propriation consisting of both the general fund appropria-
tion and the portion of the interest fund appropriated.  At
stated intervals, therefore, the money accumulated in the
interest fund is transferred to the appropriation fund.  This
has not been and is never done prior to the withdrawal from
said appropriation of an amount equal or greater, and in all
instances it has been greater, than the accession. . . . .
The transfer referred to is made by the state auditor draw-
ing a certificate authorizing the state treasurer to make the
transfer, after which both of said officers post their books
accordingly.''

It appears further that since December 31, 1917, the state
treasurer has refused to recognize the validity of such cer-
tificates.

By this action plaintiffs seek a writ of mandate to compel
the defendant Van Deusen, as state auditor, to amend and
correct the books and records of his office so as plainly to
open and show thereon a separate account of each and every
of the said funds accrued, and hereafter to accrue, from the
aforesaid respective grants of land and the proceeds thereof,
for the benefit of each and every of the said institutions
herein alleged to be entitled respectively to the use and bene-
fit of said separate funds, and that he be required as auditor
to draw his official warrants upon claims properly briefed
and allowed against said funds respectively upon the par-
ticular fund against which such claims shall, from time to
time, be properly allowed, and to command that he shall,
under no circumstances, commingle or intermingle upon the

said books and records of his office, any of the separate accounts of said educational funds with the records or accounts of any other funds or moneys, and that the said separate accounts and records of the same shall be perpetually maintained upon the said books and records of his office until the law pertaining to said separate fund shall be repealed or so amended as to become inconsistent with the order of this court. Similar directions are prayed for with reference to defendant Eagleson as state treasurer.

The funds referred to being declared by the constitution to be trust funds, are not, strictly speaking, subject to appropriation. They were appropriated or set apart for certain purposes designated by the terms of the grants which had been accepted by the state. The legislature, however, is required to provide the method by which they may be made available for such special purposes, and to that extent only are the funds subject to what may be called an appropriation. The courts are not concerned with the methods which the legislature may provide, further than that, upon proper proceedings therefor, they will prevent the diversion of the funds from the objects or purposes for which they have been granted. (*Roach v. Gooding*, 11 Ida. 244, 81 Pac. 642.)

In *Evans v. Huston*, 27 Ida. 559, 150 Pac. 14, it was held that the perpetual appropriation of the Albion Normal School fund was sufficient to justify the allowance of claims against it, and the drawing of warrants for claims properly allowed.

All of the perpetual appropriations above referred to are practically in the same language. The appropriation bill of 1917 was carefully drawn and is clear in its terms. It does not amend or repeal the perpetual appropriations referred to and is not inconsistent therewith. It does not provide for a combined appropriation fund composed of the amounts of the income from the various endowment funds and the amount appropriated from the general fund of the state for the support of such institutions. It provides that all funds received by and for the use of any of the institutions named therein, except federal aid received from the government of the United States which, under the law granting said

aid, must be retained by the institution receiving the same, shall be turned into the state treasurer monthly by such board or institution, and if said funds so reported and turned into the state treasury properly belong to the board or institution reporting the same, the state treasurer shall place such funds to the credit of said board or institution.

By the terms of the first proviso it was expressly indicated that these funds are not a part of the appropriation made by the act. Nowhere in the act is there any provision that funds belonging to the various institutions above mentioned shall be transferred to any other fund in the treasury. The bill expressly provides that "funds in an amount or amounts equal to the money or moneys so received shall be withdrawn by the state treasurer from the funds *herein appropriated,* for the board or institution receiving such funds and placed in the general fund of the state, and the appropriation or appropriations herein made for such board or institution shall be decreased automatically by such amount or amounts equal to such money or moneys so received by such board or institution." Moreover, the provision requiring that the warrants drawn by the state auditor shall be against the general fund of the state only, refers only to sums appropriated by that act from moneys belonging to the state and does not refer to funds already belonging to the institutions.

A writ of mandate is only properly issued to compel an officer to perform an act which the law specially enjoins upon him as a duty. It does not issue to prevent an officer from doing an unlawful act. It does not appear that the auditor and treasurer have failed or refused to maintain proper funds for the various institutions named in the petition. The petition, however, alleges that the auditor has failed, neglected and refused, and still fails, neglects and refuses, to draw his warrant or warrants upon any of said separate funds upon presentation to him of claims properly briefed and allowed against the said separate funds.

This is a general allegation, and does not amount to an averment that claims have been properly briefed and allowed against any of said separate funds for which the auditor has

refused to draw his warrant, and is insufficient to justify the issuance of the writ.

The writ will be denied.    No costs awarded.

Morgan, J., concurs.

Budge, C. J., took no part in the decision.