(No. 6681. December 21, 1939.)

STATE, Appellant, v. OTTO F. PETERSON and MARIE M. PETERSON, His Wife, Respondents.

[97 Pac. (2d) 603.]

J. W. Taylor, Attorney General, Lawrence B. Quinn, R. W. Beckwith, E. G. Elliott and D. W. Thomas, Assistant Attorneys General, for Appellant.

Karl Paine, for Respondents.

GIVENS, J.—April 24, 1924, respondents gave their note and mortgage for a loan of $4,700 made them by appellant from the permanent educational public school fund of the State. By agreement date of maturity was extended from April 24, 1929, to July 1, 1932. Interest to July 16, 1932, was paid December 16, 1932, thus starting the statute to run as at least of the latter date and the note and mortgage thereafter remained due and unpaid. Foreclosure was commenced December 10, 1938.

Respondent's demurrer was sustained by the trial court on the ground the cause of action was barred by section 5–216, I. C. A.[1] made applicable by section 5–225, 1. C. A.[2]

Upon appellant's failure to amend or plead further judgment was entered for respondent, dismissing the action, hence this appeal. The sole question is whether section 5–216, I. C. A., thus bars the action.

Sections 5–216 and 5–225, I. C. A., were first enacted as sections 156 and 165, chapter X, pages 30 and 31, Territorial Session Laws 1881, which adjourned February 10, 1881, and without change have been carried through subsequent compilations and codifications into the 1932 codes.

The first cession of lands foreshadowing statehood and to constitute a trust fund as further provided for and prospectively accepted by the State in article 9 of the Constitution,

[1] 5–216, I. C. A.: "Action on written contract.—Within five years: An action upon any contract, obligation or liability founded upon an instrument in writing."

[2] 5–225, I. C. A.: "The limitations prescribed in this chapter apply to actions brought in the name of the state, in the same manner as to actions by private parties."

was by act of Congress, chapter 61, volume 21, U. S. Stats. at Large, Feb. 18, 1881, page 326.[3]

Further grants were made in the admission bill, 26 U. S. Stat. at Large, chapter 656, page 215, sections 4, 5, 6, 7, 8, 10, 12; volume 1, I. C. A., pages 164–166.

Section 3, article 9, Idaho Constitution, declares the public school fund "shall forever remain inviolate and intact . . . . ," the state to supply all losses that may in any manner occur. Section 11, article 9, authorizes the loaning of said funds upon restricted securities.

Thus these public school endowment funds are trust funds of the highest and most sacred order, made so by Act of Congress and the Constitution, so considered by the members of the Constitutional Convention (vol. I, pp. 647, 773, 861; vol. II, p. 1287) and so recognized and declared by this

---

[3] "Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That there be, and are hereby, granted to the Territories of Dakota, Montana, Arizona, Idaho, and Wyoming respectively, seventy-two entire sections of the unappropriated public lands within each of said Territories, to be immediately selected and withdrawn from sale and located under the direction of the Secretary of the Interior, and with the approval of the President of the United States for the use and support of a university in each of said Territories when they shall be admitted as States into the Union: *Provided,* That none of said lands shall be sold except at public auction, and after appraisement by a board of commissioners, to be appointed by the Secretary of the Interior: *Provided further,* That none of said lands shall be sold at less than the appraised value, and in no case at less than two dollars and fifty cents per acre: *Provided*; That the funds derived from the sale of said lands shall be invested in the bonds of the United States; and deposited with the Treasurer of the United States; that no more than one-tenth of said lands shall be offered for sale in any one year; that the money derived from the sale of said lands, invested and deposited as hereinbefore set forth, shall constitute a university fund; that no part of said fund shall be expended for university buildings, or the salary of professors or teachers, until the same shall amount to fifty thousand dollars, and then only shall the interest on said fund be used for either of the foregoing purposes until the said fund shall amount to one hundred thousand dollars, when any excess, and the interest thereof, may be used for the proper establishment and support respectively of said universities.

"Approved, February 18, 1881."

court (*Roach v. Gooding,* 11 Ida. 244, 81 Pac. 642; *Parsons v. Diefendorf,* 53 Ida. 219, 23 Pac. (2d) 236; *Evans v. Van Deusen,* 31 Ida. 614, 174 Pac. 122; *State v. County of Minidoka,* 50 Ida. 419, 298 Pac. 366) and other land grant states. (*Rowlands v. State Loan Board of Arizona,* 24 Ariz. 116, 207 Pac. 359; *Special School Dist. No. 5 v. State,* 139 Ark. 263, 213 S. W. 961; *Robertson v. Monroe County,* 118 Miss. 520, 79 So. 184; *State v. Llewellyn,* 23 N. M. 43, 167 Pac. 414, 421; *State v. Donald,* 160 Wis. 21, 151 N. W. 331; *State v. McMillan,* 12 N. D. 280, 96 N. W. 310; *Wyman v. Banvard,* 22 Cal. 524, 525; *Greenbaum v. Rhodes,* 4 Nev. 312.)

 With regard to the applicability of the statute of limitations this court at an early day (1894) declared:

"It is also well settled that a state is not barred by a statute of limitations, unless expressly named. . . . . As respects public rights or property held for public use upon trusts, municipal corporations are not within the operation of the statute of limitations; . . . . " (emphasis ours). (*In re Counties, etc., v. County of Alturas,* 4 Ida. 145, 151 Pac. 349, 95 Am. St. 53.)

While the court therein had before it a controversy between counties, if the statute of limitations therein mentioned, being the provisions considered herein, did not apply to a county when acting as trustee, they would not apply to the State, because the county is only a political branch or subdivision of the State. (*Strickfaden v. Greencreek Highway Dist.,* 42 Ida. 738, 248 Pac. 456, 49 A. L. R. 1057; *Reinhart v. Canyon County,* 22 Ida. 348, 125 Pac. 791; *United States v. Nez Perce County,* 95 Fed. (2d) 238; *Edwards v. Logan County,* 244 Ky. 296, 50 S. W. (2d) 83; *Carlton v. Mathews,* 103 Fla. 301, 137 So. 815; *Crowley v. Clark County,* 219 Wis. 76, 261 N. W. 221; *Town of Saluda v. Polk County,* 207 N. C. 180, 176 S. E. 298; *City of Pendleton v. Umatilla County,* 117 Or. 140, 241 Pac. 979.) The higher the sovereignty and the more sacred (not used in a religious sense) and public the function involved the greater the reason for immunity. (37 C. J. 710–715.)

It is true *Bannock County v. Bell,* 8 Ida. 1, 65 Pac. 710, 101 Am. St. 140, overruled *Fremont County v. Brandon,*

6 Ida. 482, 56 Pac. 264, which followed *In re Counties v. County of Alturas, supra,* but expressly did not overrule *In re Counties v. Alturas, supra,* stating it was not applicable to *Bannock v. Bell, supra,* 101 Am. St. 140, 179, note.

 Thus the doctrine announced in *In re Counties v. Alturas, supra,* remains. There is as much justification because of the supporting reasons therein to hold the statute of limitations not applicable herein, as there was for the holding in *State v. Fitzpatrick,* 5 Ida. 499, at 506, 51 Pac. 112, that the usury statute did not apply to loans of school funds, and the argument of that decision is pertinent and controlling here:

"It is contended that, as said promissory notes and mortgage called for compound interest, the provisions of said section 1266 of the Revised Statutes (above quoted) are applicable to this case, and must be followed in entering judgment therein. That section prescribes the penalty for making usurious contracts or contracts for unlawful interest. It declares that such unlawful contract works a forfeiture of ten cents on the hundred by the year, and at that rate upon the amount of such contract to the school fund of the county in which the suit is brought, and that the plaintiff must have judgment for the principal sum only, less all payments of principal or interest theretofore made, and without interest or costs. The court is required to render judgment for ten per cent per annum upon the entire principal of such contract, against the defendant, in favor of the state, for the use of the school fund of the county in which the suit is brought. To apply the provisions of said section 1266 to the case at bar would deplete the permanent school fund, in violation both of the act admitting Idaho as a state and the provisions of said section 3 article 9 of the constitution, which declares that said public school fund shall forever remain inviolate and intact, and that the interest thereon only shall be expended in the maintenance of the public schools of the state. The people, through the constitution, have thus declared for what purpose all interest on the permanent fund shall be applied. No part of it can be expended in the payment of forfeitures or penalties imposed by the statute law of the state. Any law enacted by the legislature diverting one dollar of principal or interest of said fund to other purposes would be unconstitu-

tional. And if the state had been expressly named as coming within the provisions of said section 1266, which it is not, said statute would be unconstitutional so far as the state is concerned. The constitution expressly prohibited the legislature from enacting a law that would divert one dollar of said funds otherwise than as provided by the constitution.

"In the face of those solemn provisions of the constitution it is sought in this action to impose a forfeiture or penalty of $560 out of accrued interest earned by $2,000 of the permanent school fund, which interest, the constitution declares, must be distributed to the schools throughout the state; and also to reduce the permanent school fund $133.44; which fund, the constitution has declared, must be kept inviolate and intact. The legislature cannot thus do indirectly what it is prohibited from doing directly." (Emphasis ours.)

Where there are two possible constructions of a statute, one resulting in its being held unconstitutional or of doubtful constitutionality the other free from such stigma, the court should and will adopt the one free from interdiction. (*City of Idaho Falls v. Pfost*, 53 Ida. 247, 265, 23 Pac. (2d) 245.) By holding the statute of limitations not controlling herein we thus avoid the cul-de-sac of unconstitutionality forecast in the underscored portion of the above decision.

While there are expressions in *Small v. State*, 10 Ida. 1, 76 Pac. 765, *Blaine County v. Butte County*, 45 Ida. 193, 261 Pac. 338, *Little v. Emmett Irr. Dist.*, 45 Ida. 485, 495, 263 Pac. 40, 56 A. L. R. 822, *Lemhi County v. Boise Livestock Loan Co.*, 47 Ida. 712, 719, 278 Pac. 214, *State v. Naylor*, 50 Ida. 113, 294 Pac. 333, and *Common School Dist. No. 18 v. Twin Falls B. & T. Co.*, 52 Ida. 200, 206, 12 Pac. (2d) 774, which like the terms of the statutes themselves might be urged as holding sec. 5–216 a bar herein, such cases did not consider the trust relationship herein and did not overrule *In re Counties v. Alturas, supra.*

Though section 2, article 21 of the Constitution and section 21 of the Admission Bill, continued in force territorial statutes not repugnant to the Constitution it is doubtful if it could be considered that the Territorial Legislature intended

to make sections 5–216 and 5–225, I. C. A., when originally passed, applicable to bar this cause of action because no such cause of action then existed. But conceding that the statutes are to be considered as though passed after the adoption of the Constitution (*Nadeau v. Conn,* 142 Wash. 243, 252 Pac. 913) this court has in effect held them inapplicable to the state as trustee performing a high constitutional public duty, and the handling of these public school funds is of that nature. The trust relationship here is of the highest order and should be protected to the utmost. (*United States v. Nashville etc. R. Co.,* 118 U. S. 120, 6 Sup. Ct. 1006, 30 L. ed. 81; *State v. Burk,* 63 Ark. 56, 37 S. W. 406.)

Many if not all of the land grant states which have had occasion to consider the question have held that the statute of limitations governing adverse possession do not apply to the state (*Hellerud v. Hauck,* 52 Ida. 226, 13 Pac. (2d) 1099), and particularly and specifically where trust funds of this nature are involved.

"Section [4807] 4087, *supra,* under which the appellants claim by adverse possession was enacted by the territorial Legislature long prior to the admission of the state, and was in force in the state only by virtue of section 2, art. 27, of the Constitution, which provides that, 'All laws now in force in the territory of Washington which are not repugnant to this Constitution shall remain in force until they expire by their own limitation or are altered or repealed by the Legislature.' If section 4807 should be construed to give title to school lands by adverse possession, in our opinion, it is repugnant to the act of Congress and the sections of the Constitution above quoted. This question was fully considered by the Supreme Court of Minnesota in *Murtaugh v. Chicago, M. & St. P. Ry. Co.,* 102 Minn. 52, 112 N. W. 860, 120 Am. St. 600, where the statute of limitations of that state as applied to state school lands, was construed. In holding that the statute of limitations has no application to such lands, the court said: 'The state accepted the trust, and by its constitution solemnly covenanted with the United States to apply the granted lands to the sole use of its schools according to the purpose of the grant, and prohibited the sale of any portion of the granted land except at public sale. Such being

the nature of the title of the state to its school lands, it is unthinkable that the Legislature intended, by section 12, c. 66, Gen. Stat. 1866, and later acts amending it, to provide a way whereby the trust as to any of the school lands might be defeated, and title thereto acquired by adverse possession, contrary to the mandate of the Constitution that title thereto could only be obtained by a public sale thereof. The decision in the case of *Northern Pacific Railway Co. v. Townsend*, 190 U. S. 267, 23 Sup. Ct. 671, 47 L. Ed. 1044, is an interesting and authoritative one. In that case the railway company brought ejectment to recover from the defendant a portion of its right of way, to which the defendant claimed title by adverse possession under the statute of limitations of this state. Id., 84 Minn. 152, 86 N. W. 1007, 87 Am. St. 342. The Supreme Court of the United States held that, although the plaintiff's right of way, granted to it by the United States, was amenable to the police power of the state, yet an individual could not acquire title to any portion thereof by adverse possession under the statute of limitations of that state. In its opinion the court, after stating that the grant of the right of way was for a specific purpose, said; 'This being the nature of the title to the land granted for the special purpose named, it is evident that to give such efficacy to a statute of limitations of a state as would operate to confer a permanent right of possession to any portion thereof upon an individual for his private use would be to allow that to be done by indirection which could not be done directly.' We are then of the opinion that, if the statute under consideration must be construed as authorizing the acquisition of title to the school lands of the state by adverse possession, it violates in this respect, not only the terms of the grant but also the Constitution of the state. We are, however, of the opinion that the statute fairly may be given a construction which is consistent with the terms of the school land grant and the provisions of the state Constitution applicable thereto. If the statute be read in connection with the general and well-understood rule of law that the title to public lands cannot be acquired by adverse possession, the history of our school land grant, the nature of the title of the state to its school lands, and the mandate of our Constitution with reference to them, it

is clear, upon the face of the statute, that the Legislature did not intend to provide for the acquisition of the title to school lands by adverse possession. We accordingly hold that title to lands granted to the state of Minnesota for the use of its schools by the United States cannot be acquired by adverse possession, as against the state.' To the same effect, see *Scofield v. Schaeffer*, 104 Minn. 123, 116 N. W. 210; *State v. Tanner*, 73 Neb. 104, 102 N. W. 235. See also, *N. P. Ry. Co. v. Ely*, 197 U. S. 1, 25 Sup. Ct. 302, 40 L. Ed. 639. In opposition to this case the appellants cite *Schneider v. Hutchinson*, 35 Or. 253, 57 Pac. 334, 76 Am. St. 474, from the Supreme Court of Oregon, where it was held that title to school lands of that state might be acquired by adverse possession. There was no limitation on the power of alienation in Act, Feb. 24, 1859, c. 33, 11 Stat. 383, admitting Oregon into the Union, or in the Oregon Constitution, such as are found in our enabling act and in the Constitution of this State. For this reason the decision is not in point. The same is true of the cases cited from Missouri and Indiana. *School Directors v. Georges*, 50 Mo. 194; *Hargis v. Township*, 29 Ind. 70. In the language of the Supreme Court of the United States, 'This being the nature of the title to the land granted for the special purposes named, it is evident that to give such efficacy to a statute of limitations of a state as would operate to confer a permanent right of possession to any proportion thereof upon an individual for his private use would be to allow that to be done by indirection which could not be done directly'; and to permit title to school lands in this state to be acquired indirectly by adverse possession would be repugnant to the laws of the United States and the Constitution of the state." (*O'Brien v. Wilson*, 51 Wash. 52, 97 Pac. 1115, 1116, 1117; *State v. City of Seattle*, 57 Wash. 602, 107 Pac. 827, 27 L. R. A., N. S., 1188; *Van Wagoner v. Whitmore*, 58 Utah, 418, 199 Pac. 670; *Newton v. Weiler*, 87 Mont. 164, 286 Pac. 133.)

The underlying reasons of the above holdings, i. e., the existence of the trust relationship and the necessity for the preservation intact of the public school funds makes such theories just as cogent, applicable and forceful in holding the statute of limitations does not apply to a foreclosure action as to bar adverse possession.

In a forceful and well considered opinion (*United States v. Fenton*, 27 Fed. Supp. 816), Judge Cavanah noted with approval the above authorities and *Woods County v. State*, 125 Okl. 287, 257 Pac. 778, 53 A. L. R. 1128, relied upon by this court in *Kieldsen v. Barrett*, 50 Ida. 466, 297 Pac. 405, emphasizing that the fund is to be "securely and profitably invested."

The judgment is reversed and the cause remanded with directions to the trial court to overrule the demurrer and proceed accordingly.

Costs to appellant.

Ailshie, C. J., and Budge, Morgan and Holden, JJ., concur.