(No. 6038. June 1, 1933.)

HARRY C. PARSONS AND HARRY C. PARSONS, as Auditor of the State of Idaho, Plaintiff, v. BEN DIEFENDORF, as Commissioner of Public Investments of the State of Idaho, Defendant.

[23 Pac. (2d) 236.]

Edwin Snow, for Plaintiff.

Bert H. Miller, Attorney General, and D. Worth Clark, Assistant Attorney General, for Defendant.

BUDGE, C. J.—This is an original proceeding in this court for writ of prohibition. The affidavit in support of the application for the writ, after setting out that the proceeding is brought by plaintiff as state auditor and in his individual capacity, contains substantially the following averments: That the defendant is the duly elected, qualified and acting commissioner of public investments of the state of Idaho, and as such commissioner is in charge of the Department of Public Investments; that in such official capacity he has and claims power to control, loan and invest all the permanent funds of the state in such securities as are designated in the state Constitution, and to have the care and custody of all loans, bonds, warrants and other securities in which the permanent funds of the state shall be invested; that said Department of Public Investments and the said defendant as commissioner thereof have in their custody certain specified bonds issued by the state of Idaho, the property of said state, having theretofore been acquired by the Department of Public Investments upon open competitive bidding, at not less than par or face value thereof, plus accrued interest, and were purchased with moneys from the public school fund of the state of Idaho; that defendant in

his official capacity aforesaid is now negotiating the sale of said bonds at 98 per cent of the par or face value thereof, plus accrued interest to date of sale, and has found a purchaser ready, able and willing to buy said bonds at said price, with the agreement that the Department of Public Investments, at its option, may repurchase said bonds on September 1, 1934, at the same price for which they are now to be sold, plus 5 per cent interest per annum from the date of said sale to the date of said repurchase; that said proposed sale is wholly without authority of law and wholly in excess of the jurisdiction and of the power of defendant in the following respects:

(a) That the Department of Public Investments and the defendant, as commissioner thereof, have no authority in law to sell the securities in which the permanent funds of the state have been invested;

(b) That the act of the legislature under which such bonds are authorized and issued provided that they should not be sold for less than the par or face value thereof, plus accrued interest; and

(c) That the Constitution of the state of Idaho prohibits the purchase of said bonds or any of them with the permanent educational funds of the state, other than funds arising from the disposition of university lands belonging to the state.

It is further averred that the defendant threatens to and will, unless prohibited and restrained by the writ prayed for, consummate and complete said unlawful transaction to the irreparable injury of the plaintiff as a taxpayer of the state and all other taxpayers similarly situated and also to the irreparable injury of this plaintiff as state auditor and of said state. It is also averred that defendant claims and plaintiff admits the fact that the price aforesaid is the best price obtainable for said bonds and that defendant further claims to have and does have the opportunity forthwith to re-invest and keep invested, between now and September 1, 1934, in securities authorized by the Constitution and statutes, the money derived from said sale, on a basis such that

while so re-invested, part of said moneys will bear interest at not less than 5½ per cent per annum and part at not less than 6 per cent per annum, and defendant gives the aforesaid reason and justification for said proposed sale; that plaintiff has demanded of defendant that he desist from said proposed sale and defendant has refused and still refuses to desist therefrom.

Upon the foregoing application, alternative writ of prohibition and order to show cause were issued, to which defendant filed a motion to quash, upon the following grounds:

1. That said petition for said writ and the affidavit upon which it is based do not show sufficient or any facts to entitle the plaintiff to any relief;

2. That said petition and affidavit show on their face that the defendant, as commissioner of public investments of the state of Idaho, in the matters referred to in said petition and affidavit, is regularly pursuing the authority vested in him by the Constitution and statutes.

The motion to quash admits the truth of the well-pleaded allegations of the application and affidavit in support thereof (50 C. J. 705, sec. 127), but is directed to the proposition that such allegations do not warrant the relief sought. The question is therefore squarely presented as to whether or not, under the Constitution and statutes, defendant, as commissioner of public investments, has the implied authority to sell said authorized investments theretofore purchased by him with moneys of the public school fund of the state, and to re-invest the proceeds thereof in like authorized securities, it being admitted that there is no constitutional or statutory authority expressly conferred.

We will first take up the contention that permanent educational funds (except funds arising from the disposition of university lands belonging to the state), which includes public school funds (*Pike v. State Board of Land Commrs.*, 19 Ida. 268, 113 Pac. 447, Ann. Cas. 1912B, 1344), cannot be legally invested in state bonds, and hence, in so far as such securities are concerned, the defendant not only has the right, but possibly the duty, to sell them and re-invest

the proceeds in investments authorized by the Constitution and statutes. This contention is based upon the theory that the amendment in 1927 of Const., art. 9, sec. 11, excluded and eliminated state bonds from among the authorized investments for such permanent educational funds. Upon oral argument it was conceded that this contention was without merit. We are, therefore, not called upon to consider it.

 We now direct attention to the point raised by plaintiff that defendant has no implied power to sell authorized securities purchased with permanent educational funds, it being conceded that he has no express authority. In *State v. Fitzpatrick*, 5 Ida. 499, 51 Pac. 112, it is held that the authority to loan and invest such funds is limited to such powers as are conferred by law. The general powers and duties of the Department of Public Investments, now clothed with the authority to invest such funds, are limited by I. C. A., sec. 65–2901, which reads:

"The department of public investments shall have power:

"1. To control, loan and invest all the permanent funds of the state in such securities as are designated in the state constitution.

"2. To fix the rate of interest to be charged upon all loans upon real estate, but such rate shall never be less than five per cent per annum.

"3. To have the care and custody of all mortgages, bonds, warrants and other securities in which the permanent funds of the state shall be invested.

"4. To collect all moneys due the state on all mortgages, bonds, warrants, and other securities in which the permanent funds of the state shall be invested.

"5. To accept, when necessary to protect any mortgage loan, a warranty deed to the mortgaged property, in full satisfaction of the mortgage debt."

I. C. A., sec. 55–704, provides:

"The principal and interest of all loans shall be paid in lawful money of the United States, or its equivalent. Upon the payment of any loan or of any bond or warrant, the

principal shall again be loaned or invested in like manner as in this chapter provided.''

Thus, a strict limitation is also placed upon the Department of Public Investments in the exercise of its power to re-invest the proceeds of such securities upon payment thereof.

After a very careful and painstaking study of the constitutional provision and statutes we are forced to the conclusion that there is a strict and positive limitation upon the Department of Public Investments to invest the fund in certain designated and authorized securities and only upon payment thereof to re-invest the principal in like authorized and designated securities and none other.

The fund is unquestionably a sacred trust fund created for the express purpose of maintaining the public educational institutions of the state. Its history and purpose is set forth in *State v. Fitzpatrick, supra,* as follows (p. 504):

''Section 5 of the act of Congress admitting Idaho as a state provides, *inter alia,* that all lands granted for educational purposes shall be disposed of only at public sale, and that the proceeds arising therefrom shall constitute a permanent school fund, the interest of which only shall be expended in the support of the schools of the state. Section 12 of said admission act provides that said lands so granted shall be held, appropriated and disposed of exclusively for the purposes therein mentioned, in such manner as the legislature of the state may provide. Said lands were accepted by the state on those conditions. The people have spoken on this subject in the constitution of the state. They declare, in section 3 of article 9 of the constitution, as follows: 'The public school fund of the state shall forever remain inviolate and intact. The interest thereon only shall be expended in the maintenance of the schools of the state, and shall be distributed among the several counties and school districts of the state . . . . in such manner as may be prescribed by law. No part of this . . . . fund, principal or interest shall ever be transferred to any other fund, or used, or appropriated except as herein provided. The state treas-

urer shall be the custodian of this fund, and the same shall be .securely and profitably invested as may be by law directed. The state shall supply all losses thereof that may in any manner occur.' "

The state treasurer has the custody of the fund. The commissioner of public investments has the limited and restricted authority to invest the fund in the specific, designated constitutional and statutory securities and the care and custody of such securities when so invested, and the authority to collect and receive payment thereof when paid, but has no authority, express or implied, to exchange, to sell, to hypothecate or under any circumstances to change or modify said investments when once made, except upon payment thereof, and except as hereinafter mentioned.

The trust created by the Constitution and laws of this state is a fixed trust, in no sense a speculative trust or a trust that can be used for speculative purposes, however advantageous a change in investments may appear. The use of the language in Const., art. 9, sec. 3, that said funds shall be securely and profitably invested as may be by law directed is limited to the investments enumerated in the Constitution and statutes and no others. Said language, when read in connection with I. C. A., sec. 55–704, *supra,* cannot be so construed as to authorize the sale by defendant of securities theretofore purchased with the designated trust funds and the re-investment of said funds in other like securities that might or might not return increased profits.

That it was intended that only upon payment of the securities in which the permanent educational funds were invested could the same be re-invested, is further emphasized by the enactment of I. C. A., sec. 65–2902, wherein the Department of Public Investments was expressly authorized to sell any and all investments made by such department from moneys belonging to the public building endowment fund and place the proceeds from such sale in such fund, and I. C. A., sec. 65–2903, authorizing the state treasurer to use such funds to pay and retire capitol building bonds of the state whenever the same became callable. The enact-

ment of these sections seems to point clearly to the fact that special legislation was necessary to authorize the Department of Public Investments to sell securities acquired with endowment funds of that nature and utilize the proceeds and was evidently so considered and intended by the legislature.

A further exception has been made by the legislature by I. C. A., sec. 55–713, wherein provision is made in the case of loans evidenced by mortgages on improved farm lands, and the money has become due and remains unpaid. In such case, under said section, the Department of Public Investments is expressly empowered to, and it may in its discretion, receive and accept from the said mortgagor a warranty deed to the property mortgaged in full satisfaction of the debt due the state upon said mortgage, and surrender the note to the mortgagor and receipt him in full for the debt due thereon. (See, also, I. C. A., sec. 65–2901, subd. 5.)

These are the only instances we have been able to find, authorizing the sale of securities before payment thereof, thus invoking the doctrine of express mention and implied exclusion, and in all other instances except those above mentioned, such sale is impliedly prohibited.

Having reached the conclusion that defendant, as commissioner of public investments, and the Department of Public Investments have no implied power to sell the securities involved, we are not called upon to discuss other questions raised.

The motion to quash is denied and peremptory writ as prayed for is ordered issued.

Givens, Morgan, Holden and Wernette, JJ., concur.