23 P.3d 129

**IDAHO ENDOWMENT FUND INVEST-MENT BOARD, a board within the Office of the Governor, and Minidoka County Joint School District No. 331 and Kootenai Joint School District No. 274, Plaintiffs–Respondents,**

v.

**Ron G. CRANE, Idaho State Treasurer, in his official capacity, Defendant–Appellant.**

No. 26304.

Supreme Court of Idaho.
Boise, November 2000 Term.

April 18, 2001.

668

Moore, Smith, Buxton & Turcke, Boise, for appellant Michael C. Moore argued.

Hon. Alan G. Lance, Attorney General; Michael S. Gilmore, Deputy Attorney General, Boise, for respondents. Michael S. Gilmore argued.

WALTERS, Justice.

This appeal addresses the validity of the 1998 amendments to Article IX, Sections 3 and 11 of the Idaho Constitution and the subsequently enacted Idaho School Bond Guaranty Act and related statutory amend-

ments.[1] We uphold the amendments and the statutory enactments.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1998, the Idaho legislature adopted House Joint Resolution (H.J.R.) 8, which proposed to amend Sections 3 and 11 of Article IX of the Idaho Constitution. Section 1 of H.J.R.8 proposed several amendments to Article IX, § 3 including:

1. Change the name of the "Public School Fund" to the "Public School Permanent Endowment Fund."

2. Provide that earnings of the Public School Permanent Endowment Fund shall be deposited into the Public School Earnings Reserve Fund and distributed to schools, counties, and school districts; and prohibit transferring any part of the permanent endowment fund principal.

3. Provide that funds shall not be appropriated by the legislature from the public school earnings reserve fund except to pay administrative costs incurred managing the assets of the public school endowment including, but not limited to, real property and monetary assets.

4. Provide that the state treasurer is the custodian of the funds.

5. Provide that as defined and prescribed by law, the state shall supply losses incurred by the public school permanent endowment fund, excepting moneys allocated from the public school earnings reserve fund.

Section 2 of H.J.R.8 proposed an amendment to Article IX, § 11 of the Idaho Constitution as follows:

1. Change the title to Section 11 of Article IX from "Loaning Permanent Endowment Funds" to "Investing Permanent Endowment Funds."

2. Provide for investing of Permanent Endowment Funds.

Section 3 of H.J.R.8 set forth the question to be submitted to the electors of the State of Idaho at the next general election, which read as follows:

Shall Section 3, Article IX, and Section 11, Article IX, of the Constitution of the State of Idaho be amended as follows:

1. To change the name of the Public School fund to the Public School Permanent Endowment Fund;

2. To provide that the earnings of that fund shall be deposited into the Public School Earnings Reserve fund and distributed in the maintenance of the schools and among the counties and school districts of the State;

3. To provide that no part of the Public School Permanent Endowment Fund principal shall be transferred, used or appropriated to any other fund;

4. To prohibit legislative appropriations from the funds except that the legislature may appropriate moneys from the Public School Earnings Reserve Fund to pay for administrative costs incurred managing the assets of the public school endowment including, but not limited to, real property and monetary assets;

5. To provide that the state treasurer is the custodian of these funds;

6. To provide that the state shall supply losses incurred by the Public School Permanent endowment Fund, excepting losses on moneys allocated from the Public School Earnings Reserve Fund; and

1. Three sections of S.L.1999, chapter 328, were enacted into law as an emergency measure and approved on March 24, 1999. Section 1 is compiled as I.C. § 33–5301 *et seq.*, and referred to as the Idaho School Bond Guaranty Act. Section 2 is compiled as I.C. § 63–3638(6) and concerns the distribution of sales tax in "an amount required by the provisions of chapter 53, title 33, Idaho Code." Section 3 is compiled as I.C. § 57–728 providing for a credit enhancement program for school district bonds and loans, which is to take effect if the state treasurer certifies that moneys from the sales tax account or from the provisions of chapter 53, title 33 are insufficient to pay the principal of and interest on the general obligation notes issued pursuant to I.C. § 33–5308, and due and payable, and so notifies the endowment fund investment board in writing. *See* I.C. § 33–5310. These three enactments are referred to herein as "the Act."

7. To provide that permanent endowment funds may be invested, rather than loaned, in investments in which a trustee is authorized to invest pursuant to state law?

Section 4 of H.J.R.8 directed the Legislative Council to prepare the statements required by Section 67–453, Idaho Code, and file the same. Section 5 of H.J.R.8 directed the Secretary of State to publish the proposed constitutional amendment and arguments as required by law.

On November 3, 1998, the voters approved H.J.R.8, amending Article IX, Sections 3 and 11 of the Idaho Constitution. The statutes creating the Public School Permanent Endowment Fund and the Public School Earnings Reserve Fund are found at I.C. §§ 33–902, –902A, respectively. *See* 1998 Idaho Session Laws, ch. 256, §§ 7, 8.

In the November 3, 1998, election, the voters also approved an amendment to Article VIII, Section 2, pursuant to Senate Joint Resolution (S.J.R.) 106. The amendment created the "public school guarantee fund which shall consist of funds provided by law to guarantee the debt of school districts in accordance with law." The section further stated that "[t]he legislature may provide by law that reimbursement to the state shall be obtained from moneys which otherwise would be used for the support of the educational programs of the school district which incurred the debt with respect to which a payment under the state's guaranty pursuant to this section was made." Art. VIII, § 2.

Also in 1998, Congress amended the Idaho Admission Bill, in which the federal government, upon Idaho's admission into the union, endowed in trust Idaho endowment lands to the State of Idaho for the benefit of public schools. The amendment to Section 5 of the Idaho Admission Bill provided for the sale, lease or exchange of school land and authorized use of the proceeds therefrom. *See* 112 Stat. 282, Pub.L. 105–296 (1998).

In the spring of 1999, the Idaho legislature declared that an emergency existed and enacted into law an Act relating to the guarantee of school district bonds by the state. *See* 1999 Idaho Session Laws, ch. 328. *See infra*

note 1. Upon advice of bond counsel, the Idaho state treasurer refused to implement the guaranty program.

Consequently, on September 8, 1999, the Idaho Endowment Fund Investment Board and the Minidoka County Joint School District No. 331 brought this action against the Idaho state treasurer. The complaint sought a declaratory judgment that the Act was valid and constitutional and immediately subject to implementation by the treasurer, whose primary duty under I.C. § 33–5301 *et seq.*, is to administer the Act and the guaranty program. The amended complaint, which added the Kootenai Joint School District No. 274 as a plaintiff, also sought an injunction to compel the participation of the treasurer in the administration of the guaranty program, in order that the applying school districts might increase the marketability of their bonds and benefit from the state's enhanced rating on the particular school district bonds.

The treasurer answered the complaint, asserting that the creation of the public school guaranty fund and the pledge of state sales taxes for the purposes of the guaranty fund violated the Idaho Constitution by exceeding the authority of Article VIII, Section 2. The treasurer further challenged the validity of the 1998 constitutional amendments to Article VIII, Section 2 and Article IX, Sections 3 and 11 and raised the issue of whether the amendments were consistent with the Idaho Admission Bill.

On February 2, 2000, the district court issued its memorandum decision and order on the parties' motions for summary judgment. The district court entered judgment in favor of the Board, holding as a matter of law that the Act and its related amendments were constitutional and not in violation of the Idaho Admission Bill. The district court also ordered the treasurer to perform forthwith the duties of his office in accordance with the provisions of the Act. On March 3, 2000, the treasurer timely filed a notice of appeal from the district court's decision.

## ISSUES ON APPEAL

1. Did the district court err in holding that the 1998 amendments to Article

IX, Section 3 and Article IX, Section 11 of the Idaho Constitution were properly submitted to and approved by the electors?

2. Did the district court err in holding that the Act does not violate Article IX, Section 3 of the Idaho Constitution?

3. Did the district court err in holding that the Act does not violate Article IX, Section 3 of the Idaho Constitution, as amended, and interpreting the purchase of notes to be an "investment" of endowment funds and not a prohibited transfer, use or appropriation of the fund?

4. Did the district court err in holding that the Act does not violate Article VIII, Sections 1 and 2?

5. Did the district court err in holding that the Act does not violate the Idaho Admission Bill?

## STANDARD OF REVIEW

■ Summary judgment is proper only where "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Ulery v. Routh*, 107 Idaho 797, 693 P.2d 443 (1984). The record should be construed in a light most favorable to the non-moving party. *Id.* The party against whom the judgment will be entered must be given adequate advance notice and an opportunity to demonstrate why summary judgment should not be entered. *See Mason v. Tucker and Associates*, 125 Idaho 429, 432, 871 P.2d 846, 849 (Ct. App.1994).

■ One of the methods to test the constitutional validity of a statute is through a declaratory judgment action. *See Greer v. Lewiston Golf & Country Club, Inc.*, 81 Idaho 393, 342 P.2d 719 (1959). The constitutionality of statutes enacted by the legislature is a question of law. *Fremont–Madison Irr. Dist. and Mitigation Group v. Idaho Ground Water Appropriators, Inc.*, 129 Idaho 454, 926 P.2d 1301 (1996). An act of the legislature is presumed to be constitutional. *Evans v. Andrus*, 124 Idaho 6, 855 P.2d 467 (1993). It is the role of the appellate court to

seek an interpretation of a statute that upholds its constitutionality. *State v. Cobb*, 132 Idaho 195, 969 P.2d 244 (1998); *Olsen v. J.A. Freeman Co.*, 117 Idaho 706, 791 P.2d 1285 (1990).

## DISCUSSION

### I.

### *The ballot to amend Sections 3 and 11 of Article IX of the Idaho Constitution was properly submitted to the electorate*

The treasurer argues that a single ballot containing amendments to two sections of Article IX was improperly used in the 1998 election. The treasurer claims that the amendments to Section 3 and Section 11 are unrelated and independent of each other and, because the purposes of one section could be achieved without amendment to the other section, the single ballot was unconstitutional and thus illegal. The Board maintains that it was necessary to amend both sections to allow investments beyond loans that pay only interest.

■ Article XX, Section 2 of the Idaho Constitution provides that if two or more amendments to the Constitution are proposed, they shall be submitted in such manner that the electors shall vote for or against each of them separately. Art. XX, § 2. The test for determining whether a proposed state constitutional amendment complies with Article XX, Section 2 is as follows:

> The determination whether a proposed change in the Constitution constitutes one or more amendments, it seems to us, depends upon whether the change as proposed relates to one subject and accomplishes a single purpose, and the true test should be, can the change or changes proposed be divided into subjects distinct and independent, and can any one of which be adopted without in any way being controlled, modified or qualified by the other? If not, then there are as many amendments as there are distinct and independent subjects, and it matters not whether the proposed change affects one or many sections or articles of the Constitution.

*Idaho Water Resources Bd. v. Kramer,* 97 Idaho 535, 550, 548 P.2d 35, 50 (1976), *quoting McBee v. Brady,* 15 Idaho 761, 100 P. 97 (1909).

■ Section 3 previously specified that only the *interest* of the public school fund shall be expended in the maintenance of the schools of the state and prohibited any part of the principal or interest from being transferred to any other fund, or used or appropriated except as provided. Section 3 was amended to provide (1) that *earnings* of the public endowment fund shall be deposited into the public school earnings reserve fund and distributed in the maintenance of the schools of the state; (2) that no part of the public school permanent endowment fund principal shall ever be transferred to any other fund, or used or appropriated except as herein provided; and (3) that funds from the public school earnings fund could be appropriated by the legislature exclusively to pay administrative costs incurred in managing the assets of the endowment. Section 3 as amended, therefore, specifically authorized the disposition of principal and earnings of the public endowment fund.

The amendment to Section 11, which changed the title of the section, also changed the operative verb in the section from "shall be loaned on" to provide that endowment funds "may be invested" in the specified investments. The amendment did not revise the authorized investment vehicles listed in Article IX, Section 11, which are limited to "United States, state, county, city, village, or school district bonds or state warrants or other investments in which a trustee is authorized to invest pursuant to state law." These investment vehicles are commonly recognized as debt securities, *see Engelking v. Investment Board,* 93 Idaho 217, 222, 458 P.2d 213, 218 (1969), in contrast to equity securities.[2] By replacing the requirement that endowment funds only be "loaned" with language that the funds "may be invested,"

the 1998 amendment clarified how the funds are to be invested, consistent with the Court's definition of a "loan" as a type of investment, without altering the list of available investment vehicles.[3]

■ The relevant question with respect to the submission of the two amendments on a single ballot is whether the amendments are "incongruous and essentially unrelated." *See Nez Perce Tribe v. Cenarrusa,* 125 Idaho 37, 42, 867 P.2d 911, 916 (1993), *quoting Idaho Water Resource Bd., supra,* 97 Idaho at 550, 548 P.2d at 50. In our view, they are not. Section 11 of Article IX allows that endowment funds may be invested. While providing that the fund remain intact and that no part of the principal shall ever be transferred to another fund, Section 3 earmarks the earnings on the endowment fund for transfer into the public school earnings reserve fund,[4] from which the legislature may appropriate moneys only for the payment of the administrative costs incurred in managing the assets of the public school endowment fund. The amendments are related and although not dependent one upon the other, they are neither incongruous nor in conflict. We agree with the district court's finding that the two amendments were part of a common scheme to increase the flexibility of the management of the public school endowment fund. We conclude, therefore, that the joint submission of the amendments on a single ballot meets the constitutional standards of Article XX, Section 2.

## II.

### *The Act does not violate Article IX, Section 3 of the Idaho Constitution*

■ The treasurer argues that I.C. § 57–728(5) violates Article IX, Section 3 of the Idaho Constitution, which preserves intact

---

**2.** Article VIII, Section 2, which prohibits the state from becoming a stockholder in any association or corporation, also limits investment of endowment funds.

**3.** In interpreting the language of the pre-amendment Section 11, the Court held that a "loan" was not to include all types of investment, only

those with a guarantee of full repayment of principal as well as interest. *See Engelking, supra* at 223, 458 P.2d at 219.

**4.** Idaho Code § 33–902A sets forth the sources of funds, in addition to the earnings of the public school endowment fund, which were to make up the public school earnings reserve fund.

the endowment fund for the benefit of the public schools of Idaho, by prohibiting the transfer, use or appropriation of the fund except as specified. The treasurer claims that the statutory mandate to the Board, found in I.C. § 57–728(5), to "make available the sum of at least one hundred million dollars ($100,000,000) from the public school permanent endowment fund, for purposes of purchasing notes as authorized by this section" does not comply with the constitution and accordingly, must be held to be invalid.

First, the treasurer argues that the district court erred in finding that I.C. § 57–728(5) does not mandate a transfer of funds that is not authorized by Article IX, Section 3. The treasurer contends I.C. § 57–728(5) improperly appropriates and authorizes that a portion of the endowment funds be used for the purposes of administering the provisions of the bond credit enhancement program. The treasurer also contends that the statute is an unconstitutional device making it possible for the legislature to reach the principal and interest of the endowment fund after all other resources to pay the deficiencies on the school district bonds have been exhausted.

Although the treasurer has argued on appeal that I.C. § 57–728(5) violated Section 3 as it existed prior to and subsequent to the amendment, we note that the statute became law in March of 1999. Because we have held that the amendments to Article IX were validly adopted in the November 3, 1998, election, we will consider only whether the setting aside of endowment funds for the purpose of purchasing notes under I.C. § 57–728(5) constitutes a use or appropriation in derogation of Section 3 as amended.

In *Parsons v. Diefendorf,* 53 Idaho 219, 23 P.2d 236 (1933), the Court held:

> The use of the language in Const., art. 9, sec. 3, that said funds shall be securely and profitably invested as may be by law directed is limited to the investments enumerated in the Constitution and statutes and no others.

*Id.* at 226, 23 P.2d at 239. Pursuant to Article IX, Section 11, "[t]he permanent endowment funds ... may be invested in United States, state, county, city, village, or school district bonds or state warrants or other investments in which a trustee is authorized to invest pursuant to state law." Pursuant to I.C. § 57–723, the investment board or its investment manager or custodian "shall have the care and control of all investment instruments representing mortgages, bonds, warrants, investments and other securities in which the permanent endowment funds and earnings reserve funds of the state shall be invested."

A note is usually a short-term interest bearing debt instrument issued by a corporation or governmental entity to provide for a particular financial need. *See* BLACK'S LAW DICTIONARY 172 (7th ed.1999). Under the statutory scheme governing the investment of permanent funds, the return on notes to be purchased with endowment funds is assured and the terms and conditions, which require that they bear interest at a rate equal to an annual rate of ten percent higher than average interest earned on the investment of the endowment fund or meet the return of the highest category of investments in its portfolio. *See* I.C. § 57–728(3).

The district court held that the purchase of notes is not a transfer of principal but is the purchase of an investment, which is a state-issued and backed investment. Thus, the district court explained, there is no reduction in principal, which is the focus of the constitutional prohibition. We conclude that the purchase of notes is not a transfer or use of endowment funds but fits squarely within the definition of an investment to be held as an asset of the fund, which in turn will produce income for the fund. The setting aside of money for the purposes of I.C. § 57–728(5) does not effect a transfer into any other fund and does not accomplish a distribution of the asset other than in the maintenance of the schools of the state. Idaho Code § 57–728(5) does not infringe on the Constitution.

The treasurer's next argument that the legislation is merely a ruse to allow invasion of the corpus of the endowment fund is without merit. Section 3 of Article IX of the Constitution requires not only the secure and profitable investment of endowment funds but also that any losses to the endowment fund, occasioned by investment, will be made

up by the legislature. Idaho Code § 57–728(5) is not an open door to the legislature to invade the permanent endowment funds.

## III.

### *The Act does not violate the Idaho Admission Bill*

Section 5 of the Idaho Admission Bill[5] provides for the proceeds of the sale of school land, upon certain conditions, to be transferred to the public school permanent fund and expended only for the support of public schools. § 5(a)(2)(A)(i). Earnings on amounts in the public school permanent endowment fund shall be deposited in an earnings reserve fund to be used for the support of public schools of the state. § 5(a)(2)(B).

The treasurer maintains that, under the Idaho Admission Bill, endowment funds are to be used exclusively for the maintenance of the state's public schools. He argues that I.C. § 57–728(5) violates the congressional mandate by authorizing the purchase of notes to implement the Idaho Bond Guaranty Act, which cannot be construed as an expenditure for the general support of the state's public schools.

We have heretofore determined that the notes contemplated by I.C. § 57–728(5) are investments and that the legislation is not an attempt to divert endowment funds to an unconstitutional purpose in violation of Article IX, Section 3. Because of the shared purpose of this provision and Section 5 of the Idaho Admission Bill, we conclude that the Idaho Admission Bill is not offended by I.C. § 57–728(5).

## IV.

### *The Act does not violate Article VIII of the Idaho Constitution*

An amendment to Article VIII of the Constitution was ratified at the 1998 general election. It provides in part for the creation of "the public school guaranty fund which shall consist of funds provided by law to guarantee the debt of school districts in accordance with law." Art. VIII, § 2(2). The amendment creates an exception from the

prohibition, found in Section 1, against giving the state's credit and exempts any debt guarantee, the school district guaranteed thereby, or any borrowing of the state undertaken to facilitate the payments of the state's obligation under any debt guarantee as a debt of the state. The amendment also states that "[t]he legislature may provide by law that reimbursement to the state [for the guaranty funds used to service the school debt] shall be obtained from moneys which otherwise would be used for the support of the educational programs of the school district which incurred the debt with respect to which a payment under the state's guaranty pursuant to this section was made." Art. VIII, § 2(2).

As part of the Idaho School Bond Guaranty Act, the legislature pledged "[t]he sales tax of the state ... to guarantee full and timely payment of the principal of ... and interest on, voter approved bonds ...." I.C. § 33–5303(2)(a). The amount to be transferred from the state sales tax account, in each year after the issuance of general obligation notes under the chapter and until all outstanding notes are retired, shall be "an amount sufficient to pay all principal of and interest on the general obligation notes as they become due." I.C. § 33–5309(1)(a). *See also* I.C. § 63–3638(6) (providing for distribution by the tax commission of sales tax money collected).

The treasurer argues that Article VIII, Section 2(2) of the Constitution requires that the amount deposited into the guaranty fund not be in excess of the amount of state aid to the school district. Because the pledge of state sales taxes to guarantee the public school debt is unlimited, the treasurer asserts that I.C. § 33–5303(2)(a) is unconstitutional. This issue, therefore, concerns the scope of the guaranty fund and the relationship between the amount of the guaranteed debt and state assistance to the school district seeking payments under the guaranty program.

The district court determined that there is nothing in Article VIII, Section 2 prohibiting a pledge of state sales tax proceeds in an amount exceeding state aid in support of

---

**5.** 26 Stat. L. 215, ch. 656; am.1998, P.L. 105–296.

educational programs. The district court also determined the statutory scheme that does not effect a transfer of money into the public school guaranty fund until it becomes necessary to draw upon the fund to be a valid exercise of legislative power.

The extent of sales taxes to be transferred into the guaranty fund is fixed by I.C. § 33–5309(1)(a) as "an amount sufficient to pay all principal of and interest on the general obligation notes as they become due." Further, I.C. § 33–5309(1)(c)(i) specifies that upon receipt of the notice of the deficiency from the state treasurer, the state tax commission will immediately fix "the amount necessary and in the amount of the deficiency" and cause money to be transferred into the public school guaranty fund. There is thus no basis for the treasurer to claim that the pledge of state sales tax receipts is unlimited or that the pledge creates a liability beyond the debt service on the school district bonds.

The correlation between the amount of state assistance to school districts and the extent of sales tax money that can be pledged to the guaranty fund is not a limitation expressed in Article VIII, Section 2. A reasonable construction of the statutes and the constitution leads to the conclusion that the alleged constitutional invalidity is not manifest or clearly shown. *See Rich v. Williams*, 81 Idaho 311, 317, 341 P.2d 432, 435 (1959). The party asserting the unconstitutionality of statute bears the burden of showing it. *Id.* Here, the appellant has failed to show that the pledge of state sales tax money was prohibited by Article VIII, Section 2.

## CONCLUSION

The amendments to Article IX, Sections 3 and 11 dealing with the public school endowment fund were properly submitted to the voters for ratification in the November 1998 election. We conclude that the setting aside of monies from the public school endowment fund for the purpose of purchasing notes to pay defaulted school district bonds is not a transfer, use or appropriation of funds in violation of either Article IX, Section 3 of the Idaho Constitution or Section 5 of the Idaho Admission Bill. We hold the pledge of state sales tax monies pursuant to I.C. § 33–5303(2) not to be in conflict with the proscription against giving the state's credit found in Article VIII, Sections 1 and 2.

The decision of the district court declaring the Idaho School Bond Guaranty Act valid and constitutional and immediately subject to implementation by the state treasurer, is hereby affirmed. No costs or attorney fees are awarded.

Chief Justice TROUT, Justice SCHROEDER and Judge WOOD, Pro Tem, concur.

Justice KIDWELL, Specially Concurring.

It is with some hesitation that I concur with the majority opinion. Although the School Bond Guarantee Act appears to withstand constitutional scrutiny, the needle has been threaded in such a way that only experienced Bond Counsel can comprehend the nuances of the legal gymnastics.

At the outset, I would point out that I find no fault with the legislature's intentions of providing school districts with lower interest bonds. Obviously this is a desirable goal and one worthy of the legislature's time and efforts.

However, I would like to voice my concern over the potential consequences of possibly breaching the sanctity of the Permanent Endowment Fund. From the time of statehood, the monies and lands which comprise the principal of the Permanent Endowment Fund have been considered "trust funds of the highest and most sacred order, made so by Act of Congress and the Constitution, so considered by the members of the Constitutional Convention and so recognized and declared by this court ...." *State v. Peterson*, 61 Idaho 50, 53–54, 97 P.2d 603, 604 (1939) (internal citations omitted). The current version of Article IX, § 3, like its predecessors, prohibits the disposition of the principal of the fund, and mandates that the fund "shall forever remain inviolate and intact ...."

While the current statutory scheme does not appear to directly violate this Constitu-

676

tional provision, it appears to me to obfuscate what was originally intended.